**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Alberto GESSA, Defendant–Appellant, Cross–Appellee.**

Nos. 90–5825, 90–5903.

United States Court of Appeals, Sixth Circuit.

Argued May 6, 1991.

Decided Aug. 29, 1991.

Rehearing En Banc Granted, Opinion Vacated Nov. 8, 1991.

Joe B. Brown, U.S. Atty., H.H. Hester, Asst. U.S. Atty. (argued and briefed), Office of U.S. Atty., Nashville, Tenn., for plaintiff-appellee, cross-appellant.

Charles R. Ray (argued and briefed), Bryan & Marett, Nashville, Tenn., for defendant-appellant, cross-appellee.

Before KRUPANSKY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Defendant Alberto Gessa (Gessa) appealed his conviction and sentence on one conspiracy and one substantive count of cocaine distribution. The United States cross-appealed from the district court's alleged misapplication of the sentencing guidelines.

Following Gessa's conviction by jury on both counts, the district court on June 13, 1990 sentenced him to serve 96 months in prison. The sentence resulted from a one-month downward departure from a selected guideline range of 97–121 months. The government cross-appealed, charging that, in predicating the sentence upon only 2.5 to 3 kilograms of cocaine, the district court had improperly ignored its own finding that Gessa had conspired to import and distribute 2,500 kilograms of cocaine.

Gessa was named along with 18 co-defendants in a 23–count indictment returned on February 28, 1989. Gessa was charged in count 1 with conspiring "from and in and about the summer of 1988" with all co-defendants to distribute cocaine and other substances. Count 11, the only other count in which Gessa was named, charged him and six others with the substantive offense of distributing unspecified quantities of cocaine in the Middle District of Tennessee "[i]n or about the spring and summer of 1988."

When Gessa became aware of the government's intention to insist upon his pretrial detention, he fled the jurisdiction and remained a fugitive for nine months. By the time he was finally apprehended on September 20, 1989, all of his co-defendants had either been tried and convicted or had pleaded guilty to the substantive and conspiracy charges against them. As a result of his fugitive status, Gessa was the last of the co-indictees to face trial.

The Government's evidence at Gessa's trial consisted primarily of the testimony of Camille Kohler (Kohler), the "bookkeeper" for the cocaine distribution ring headed by Gessa's brother, Alexander Gessa (Alex Gessa), and staffed in various capacities by the remaining co-indictees. In league with Kohler and the numerous co-conspirators, Alex Gessa operated an organization that customarily obtained cocaine in South Florida and distributed the drug in the Nashville, Tennessee area. Testimony from Kohler and others disclosed that the organization had, during a period spanning from the late spring of 1988 until Thanksgiving of that year, obtained approximately 2.5 to 3 kilograms of cocaine from Gessa for distribution in the Middle District of Tennessee.

Gessa objected to the admission of this testimony, arguing that it was hearsay information initially conveyed to the witnesses by non-testifying declarants. Concluding that the government had proven the existence of a conspiracy by a preponderance of the evidence, and that Alex Gessa's statements attributing the drugs to Gessa were made in "furtherance" of that conspiracy, the district overruled Gessa's objection pursuant to Fed.R.Evid. 801(d)(2)(E) and an accompanying *Vinson–Enright* ruling.[1]

Also over objection, the court permitted testimony that Gessa and his brother had, prior to their indictment, planned to import approximately 2,500 kilograms of cocaine from Columbia. According to Kohler, the Gessa brothers had intended to travel in Alex Gessa's boat from Fort Lauderdale to Green Turtle Cay, a remote island in the Bahama chain, to obtain 2,500 kilos of Columbian cocaine to be air-dropped on the island. Kohler related how the Gessa brothers conspired to ferry the drugs to the United States mainland and transship them to Tennessee for distribution. Kohler testified that, in furtherance of this grand scheme, she wired large amounts of cash from Tennessee to Alex Gessa in Fort Lauderdale, and had, in addition, arranged for the transportation of Alex Gessa's boat from Nashville to Florida. Kohler also dis-

---

1. *See United States v. Vinson,* 606 F.2d 149 (6th Cir.1979); *United States v. Enright,* 579 F.2d 980 (6th Cir.1978).

closed that the brothers had engaged in what she characterized as "practice runs" in preparation for the boatlift. Witnesses Jesus Fleitas and Eli Palmer testified that on various occasions immediately preceding the timeframe of the alleged conspiracy they had accompanied Gessa to Green Turtle Cay to conduct similar (albeit smaller-scale) operations. In an effort to explain the money transfers and the shipment of his boat to Fort Lauderdale, Alex Gessa testified that he needed both the money and the boat to pursue an on-going, expensive relationship with one Laurie Becak, and that—in a ruse designed to mislead Kohler, with whom he was also romantically involved—had feigned interest in importing cocaine.

Gessa charged that the district court erred when it permitted witness Fleitas to testify that he (Fleitas) had accompanied Gessa to Green Turtle Cay to obtain cocaine on two occasions prior to the inception of the alleged conspiracy. Gessa objected to the introduction of this evidence under Fed.R.Evid. 404(b), arguing that Fleitas's testimony was unduly prejudicial evidence of prior bad acts. The district court, however, admitted the testimony, concluding that the evidence was probative of "preparation" or a "plan" to import and distribute 2,500 kilograms of cocaine.[2]

Gessa asserted on appeal that, subsequent to his conviction, the government erroneously advanced the 2,500 kilograms of cocaine as a predicate quantity for sentencing purposes. The probation officer who prepared the presentence investigation report recommended to the district court that this greater quantity be assessed as "relevant conduct" under the guidelines. Pursuant to this observation, the probation officer calculated a base offense level of 36,[3] and added two points for Gessa's obstructive behavior in failing to surrender to the authorities upon his indictment. Coupled with a criminal history category of I, this yielded a sentencing range of from 235 to 293 months of incarceration.

Subsequent to a series of sentencing hearings, the district court concluded as a matter of fact that Gessa and his brother had conspired to import 2,500 kilograms of cocaine via the Bahamas. "The court is genuinely convinced and satisfied that there was such a scheme and subject of the conspiracy." In reaching this conclusion, the court expressly credited Kohler's testimony over that of Alex Gessa.

The district court, however, was not disposed to sentence Gessa accordingly. The court opined that it would have been "something else" for sentencing purposes if the Gessa brothers had actually "got that twenty-five hundred kilograms to shore...." The court remarked that the mere finding by a preponderance of the evidence that the scheme existed did not warrant imposition of such a draconian sentence for what the court termed "conversational cocaine."[4]

The court advanced another, seemingly independent reason for its refusal to sentence Gessa according to the volume of cocaine implicated in the conspiracy. The

---

**2.** Kohler's testimony concerning the importation plan was separately admitted pursuant to the trial court's aforementioned *Vinson–Enright* ruling.

**3.** Narcotics sentences under the guidelines are calibrated to the quantity of substance implicated in the offense(s) of conviction. The guidelines currently do not make separate sentencing provision for quantities of salt cocaine in excess of 1,500 kilograms. Under the version of the guidelines presently in effect, quantities in excess of 1,500 kilos earn a base offense level of 42, which corresponds to a sentencing range of least 360 months to life imprisonment. U.S.S.G. § 2D1.1(c)(1) (Nov. 1, 1990). At the time of Gessa's offense, the highest base offense level applicable to his conduct was set at 36 for quantities of cocaine in excess of 50 kilograms. U.S.S.G. § 2D1.1(c)(1) (Nov. 1, 1987).

**4.** The court made the following comments at sentencing:

I'm not troubled, I'll tell you, with finding there is—by a preponderance of the evidence there is a factual basis to sustain this in the record. That really misses the point. You know what the point is, whether he ought to be charged with twenty-five hundred kilograms for the purpose of punishment. And that's altogether a different question, because I've got—I've got some real reservations about punishing people for these amounts of contraband that are only the subject of conversation.

\* \* \* \* \* \*

But that again brings us back to the point that while I credit Camille Kohler's testimony, it's a question of whether that should be the basis of punishing this man for an extraordi-

court noted that all of Gessa's co-indictees had already been convicted and sentenced, and none, apart from kingpin Alex Gessa, had received a sentence longer than 97 months of incarceration, with most of the lower-level conspirators receiving sentences ranging from 10 to 60 months because their respective participation involved comparatively small quantities of cocaine. It is important to note, though, that organizational kingpin Alex Gessa received a sentence of 30 years pursuant to his plea of guilty to count 22 of the indictment, which charged him with leading a continuing criminal enterprise in violation of 21 U.S.C. § 848. (Neither Gessa nor any other co-defendant apart from Alex Gessa was charged under 21 U.S.C. § 848, the federal "kingpin" statute.) Alex Gessa's sentence reflected the statutory mandatory minimum for the offense of conviction, *see id.*, and therefore was not premised in any way upon the quantity of cocaine implicated in his conduct.

The reasons for Gessa's sentencing dilemma are disclosed in the record. The prosecutions of the first 18 co-defendants had been conducted by an Assistant United States Attorney who had resigned from the United States Attorney's office prior to Gessa's capture. At the evidentiary hearing, the initial A.U.S.A. testified that, upon an evaluation of the evidence available to him at the time Gessa's co-defendants were scheduled for trial, he was of the considered opinion that the proof would not support a finding that the conspirators intended to import 2,500 kilograms of cocaine. However, the successor A.U.S.A. to whom Gessa's case was subsequently assigned for prosecution had the advantage of nine extra months in which to prepare a case against Gessa, during which period government investigations developed additional evidence of sufficient weight to warrant a prosecution of Gessa for conspiring to import, possess and distribute 2,500 kilograms.

Although the trial court credited Kohler's testimony and concluded that Gessa conspired to import, possess and distribute 2,500 kilograms of cocaine, it nevertheless rejected the probation officer's recommendation that Gessa be sentenced accordingly. Instead, the trial court decided to equalize Gessa's sentence with those of his co-defendants by selecting 2.5 to 3 kilograms of cocaine as the relevant conduct quantity, which was an amount commensurate to that upon which his co-conspirators had been sentenced, and which was the quantity that Gessa had actually delivered to the conspiracy during the timeframe alleged in the indictment.[5] In so doing, the court arrived at an offense level of 26, to which it added two points for obstruction of justice, resulting in a sentencing range of from 97 to 121 months. Without explaining its reasons for doing so, the district court proceeded to sentence Gessa to 96 months incarceration, a sentence representing a downward departure of one month from the selected guideline range.[6]

■ In his appeal, Gessa has asserted that the district court erred in admitting hearsay testimony from other co-conspirators. In doing so, the district court ruled the evidence admissible pursuant to Fed. R.Evid. 801(d)(2)(E) as co-conspirator statements made during the course of and in furtherance of the conspiracy. *See United States v. Enright,* 579 F.2d 980 (6th Cir. 1978); *United States v. Vinson,* 606 F.2d 149 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). This evidentiary ruling was not an abuse of the trial court's discretion.

■ Gessa also challenged the district court's admission of testimony concerning his excursions to Green Turtle Cay prior to

---

nary amount of cocaine. That's what I call conversational cocaine. *J.App.* at 358, 369.

**5.** "Now, if the Court were to find that the appropriate offense level in this case would be calculated by including and crediting this twenty-five hundred kilograms ..., in effect, resulting in a guideline range of two hundred and thirty-five to two hundred and ninety-three months, it would be the grossest sort of disparity and distortion with regard to the co-defendants in this case." *J.App.* at 394.

**6.** In light of the disposition reached herein, it is unnecessary for this court to address the district court's failure to explain its rationale for departing downward one month from the selected guideline range.

the inception of the conspiracy charged in the indictment. He argued that the testimony was inadmissible under Fed.R.Evid. 404(b) as "[e]vidence of other crimes, wrongs, or acts." This ruling, too, was not an abuse of discretion because the prior excursions were probative of his "intent, preparation, [or] plan" to make future voyages to the Bahamas for this illicit purpose. *See United States v. Robison,* 904 F.2d 365, 368 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990) (evidence of similar drug transactions occurring five months before timeframe of conspiracy as charged in indictment admissible under Rule 404(b)).

Accordingly, this court finds Gessa's challenges to the introduction of evidence relating to the 2,500 kilogram importation scheme are not well taken. Upon review of the record, the briefs and arguments of the parties, and the existing precedent, this court concludes that Gessa's remaining assignments of error are equally without merit.

In its cross-appeal, the Government challenged the district court's refusal to sentence Gessa in accordance with its preliminary factual finding that Gessa and his brother were conspiring to move 2,500 kilograms of cocaine into the United States for the purposes of distributing the drugs in Tennessee. The guidelines mandate that the district court determine Gessa's base offense level "on the basis of ... all such acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Pursuant to this section, "the *entire* quantity of cocaine attributable to a distribution enterprise *must* be used to establish the base offense level of a conspirator to the undertaking." *United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991) (emphasis added) (citing *United States v. Sailes,* 872 F.2d 735, 738–39 (6th Cir.1989)).

■ This language is mandatory, not precatory, and accordingly the district court erred in concluding, on the one hand, that Gessa and his brother had, in the course of the conspiracy charged in the indictment, formed plans to import 2,500 kilograms, and electing, on the other hand, to ignore that finding in imposing sentence. The district court's refusal to properly apply the guidelines in sentencing Gessa was contrary to the accepted precept that "[u]nder the sentencing guidelines, the amount of drug being negotiated, even in an uncompleted distribution, shall be used to calculate the total [a]mount in order to determine the base offense level." *United States v. Perez,* 871 F.2d 45, 48 (6th Cir. 1988), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989); *accord United States v. Gonzales,* 929 F.2d 213, 216 (6th Cir.1991). *See* U.S.S.G. § 2D1.4, App. Note 1.

The appropriate application of a base offense level predicated upon a relevant conduct quantity of 2,500 kilograms would (with the addition of two points for obstruction of justice) have resulted in detention ranging from 235 to 293 months, a sentence substantially in excess of the terms received by all of the other conspirators, save Alex Gessa. In sentencing Gessa for a cocaine offense involving only 2.5 to 3 kilograms of the drug, the district court effectively departed downward from the recommended guideline range. This court must determine whether the district court was legally justified in materially departing from the recommended guideline range so as to conform Gessa's sentence with those of his co-defendants.

This circuit has considered this question on two previous occasions, but with inconsistent results. In *United States v. Parker,* 912 F.2d 156 (6th Cir.1990), the first panel to address the validity of equalization departures concluded that the departure authority could not be utilized for the sole purpose of achieving uniformity between co-defendants. *Id.* at 158. *Parker's* overarching point is that the guidelines, in and of themselves, make full account for the disparate offense characteristics that may exist among co-defendants, and that disproportionality is both a rational and legitimate consequence of the sentencing scheme.

In *United States v. Nelson,* 918 F.2d 1268 (6th Cir.1990), a case decided several

months after *Parker,* another panel of this court concluded that it is "not improper *as a matter of law* for the district court to depart downward in an attempt to generally conform [one co-conspirator's] sentence with the sentences of [the others]...." *Id.* at 1275 (emphasis original). "We cannot say, as a matter of law ..., that there could never be a situation in which strict letter application of the guidelines would result in an unreasoned disparity of sentences among multiple defendants guilty of a single criminal transaction such that a district court would be justified in departing from the guidelines in order that reasonable sentence conformity might be achieved." *Id.* at 1272.

■ It is an accepted prudential doctrine of this circuit that "[o]ne panel of this Court cannot overrule the decision of another panel; only the Court sitting en banc can overrule a prior decision." *Timmreck v. United States,* 577 F.2d 372, 376 n. 15 (6th Cir.1978), *rev'd other grounds,* 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *accord Meeks v. Illinois Central Gulf R.R.,* 738 F.2d 748, 751 (6th Cir.1984). Thus, because it preceded the decision in *Nelson, Parker* is the law of this circuit. Absent guidance to the contrary from the Supreme Court, or en banc reconsideration of this issue by this circuit, a district court in the Sixth Circuit may not engage in "equalization departures," *i.e.,* may not depart upward or downward from a selected guideline range solely on the basis of a perceived lack of proportionality between the sentences imposed on co-defendants.[7]

In sum, to the extent that the district court engaged in an equalization departure, it erred under the holding of *Parker.* In this circuit, departure solely for the sake of conformity among co-defendants is not authorized under the guidelines, and Gessa's sentence should have been calculated with reference to a conspiracy to import and distribute 2,500 kilograms of cocaine, the sentences of his co-defendants notwithstanding.

Accordingly, it is the decision of this court that appellant's assignments of error are not well taken, and the district court's related rulings and dispositions are hereby AFFIRMED. This court further concludes that the government's cross-appeal challenge to Gessa's sentence is well taken, and the trial court's sentencing judgment is hereby VACATED and the case is REMANDED for resentencing in a manner consistent with this opinion.

CONTIE, Senior Circuit Judge.

I concur in the majority's conclusion that the Guidelines preclude the district court from first concluding that the 2500 kilogram conspiracy was established by a preponderance of the evidence and then disregarding that amount as mere "conversational cocaine." U.S.S.G. § 2D1.4 specifies that the amount of the drug being negotiated, even in an uncompleted distribution, must be used to determine the base offense level.

I believe, however, that it was inherently inconsistent for the district court to state, on the one hand, that the hearsay testimony of Camille Kohler established the 2500 kilogram conspiracy by a preponderance of

---

7. The court acknowledges that the *Nelson* decision has received favorable scholarly comment. Weich, *The Strange Case of the Disappearing Statute,* 3 Fed.Sent.Rep. 239, 241 (1991) (Sixth Circuit's endorsement in *Nelson* of equalization departures "rests upon a thoughtful analysis of the congressional intent underlying the Sentencing Reform Act"). The trend in other circuits, however, conforms to this court's decision in *Parker. See United States v. Wogan,* 938 F.2d 1446 (1st Cir.1991) (sentencing disparity between equal partners in heroin distribution scheme resulting from government's enhanced effort to prove a greater "relevant conduct" quantity at second co-defendant's sentencing may not be reduced through equalization departure); *United States v. Carr,* 932 F.2d 67, 73 (1st

Cir.1991) ("district court's individual beliefs as to proportionality and uniformity based on sentencing in other cases cannot *alone* constitute aggravating or mitigating circumstances not adequately taken into consideration by the Sentencing Commission") (emphasis added); *United States v. Joyner,* 924 F.2d 454, 461 (2nd Cir.1991); *United States v. Enriquez–Munoz,* 906 F.2d 1356, 1359–60 (9th Cir.1990) (equalization concerns do not justify *upward* departure). But see *United States v. Ray,* 920 F.2d 562, 567–68 (9th Cir.1990), wherein a panel of the Ninth Circuit concluded, in apparent conflict with *Enriquez–Munoz,* that *downward* departures for equalization purposes are permitted in "highly unusual" cases.

the evidence and then to conclude, on the other hand, that the 2500 kilogram deal was "just talk," and therefore was too tenuous and remote to be taken into account for sentencing purposes. Because of the inequity that results between defendant's sentence and the sentences of his co-conspirators if the 2500 kilogram amount is included in calculating his offense level, I would remand the case to the district court in order to resolve this inconsistency. The implicit finding of the district court is that talk about the 2500 kilogram deal was real, but the deal was only wishful thinking. I believe the district court should be given an opportunity to make this finding explicit.

Also, the district court made no factual findings under application note 1 of U.S.S.G. § 2D1.4 about whether defendant was capable of producing the 2500 kilogram amount allegedly discussed. If, on remand, the evidence indicates that defendant did not have the capacity to obtain and distribute 2500 kilograms of cocaine by way of air-drop and boat-lift, the district court would be correct in excluding that amount from the sentencing calculation. If defendant did have the capacity, the 2500 kilogram amount should be included. This court in *United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990) stated that "findings of fact important to calculating a defendant's offense level ... must generally be made by a preponderance of the evidence." In the present case, the district court has not determined whether it has been established by a preponderance of the evidence that defendant had the capacity to produce 2500 kilograms of cocaine. I would remand for this determination.

### ORDER.

Nov. 8, 1991.

Before: MERRITT, Chief Judge; KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, and SILER, Circuit Judges.

A majority of the Judges of this Court in regular active service have voted for rehearing of this case en banc. Sixth Circuit Rule 14 provides as follows:

> The effect of the granting of a hearing en banc shall be to vacate the previous opinion and judgment of this court, to stay the mandate and to restore the case on the docket as a pending appeal.

Accordingly, it is ORDERED that the previous decision and judgment of this court is vacated, the mandate is stayed and this case is restored to the docket as a pending appeal.

The Clerk will direct the parties to file supplemental briefs and will schedule this case for oral argument as soon as practicable.