UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan Alberto GESSA, Defendant–
Appellant.

No. 94–6067.

United States Court of Appeals,
Sixth Circuit.

Submitted May 23, 1995.

Decided June 15, 1995.

Hilliard H. Hester, Asst. U.S. Atty. (briefed), Office of the U.S. Atty., Nashville, TN, for plaintiff-appellee.

Alberto Juan Gessa, Marianna, FL, pro se and Charles R. Ray (briefed), Ray & Hausch, Nashville, TN, for defendant-appellant.

Before: KENNEDY, JONES, and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

The defendant-appellant, Juan Alberto Gessa ("Gessa"), challenged his aggregate sentence of 235 months of imprisonment to be followed by five years of supervised release imposed upon resentencing on July 28, 1994 after a jury conviction on one count of conspiracy to import cocaine and other illegal narcotics into the United States and one count of unlawful distribution of cocaine. On appeal, Gessa averred that the evidence insufficiently proved that he possessed the requisite intent and capability to produce the 2,500 kilograms of conspiratorial cocaine attributed to him by the sentencing court.

Initially, the trial court had sentenced the appellant to serve 96 months in prison. Although the district court had found that Ges-

sa had conspired to import and distribute 2,500 kilograms of cocaine, it refused to impose a sentence predicated upon this volume but instead relied solely upon approximately 2.5 to 3 kilograms of cocaine which had actually been trafficked by Gessa and his coconspirators between late spring and Thanksgiving of 1988 in order to avoid what it characterized as a sentencing disparity.[1] *United States v. Gessa,* 944 F.2d 265, 266–68 & n. 5 (6th Cir.1991).

On cross-appeals by the defendant and by the government, a panel of this court rejected Gessa's challenge to his conviction and sentence and further remanded the action to the district court for resentencing with reference to the 2,500 kilogram conspiratorial drug volume. *Id.* at 270. However, upon *en banc* rehearing, the circuit court determined that the lower court's findings were ambiguous as to the defendant's intent and ability to produce a conspiratorial volume of 2,500 kilograms of cocaine. *United States v. Gessa,* 971 F.2d 1257, 1265 (6th Cir.1992) (*en banc*). Accordingly, the *en banc* court vacated the sentence and remanded the case for further findings and resentencing, although it affirmed the conviction. *Id.* at 1268.

Upon remand, the lower court issued the following factual findings in support of its ultimate conclusion that the defendant possessed the requisite intent and ability to implement the planned conspiracy to import 2,500 kilograms of cocaine:

> I expressly credit the testimony of Camille Kohler [a key prosecution witness] with regard to the existence of a conspiracy, including Alexander Gessa [the defendant's brother] and Alberto Gessa [the defendant] to import into this country 2500 kilograms of cocaine to be obtained at sea and brought into south Florida and then

shipped, at least in part, to the Middle District of Tennessee.

> The court is convinced that Ms. Kohler has told the truth, in this respect ... the court is convinced that Ms. Kohler has told it truthfully. That there was an agreement between Alexander Gessa and Alberto Gessa to bring cocaine into this country from the sea.

> I further find by a preponderance of the evidence that Ms. Kohler's testimony in this respect is corroborated by the early-on debriefings or statements given by Mr. and Mrs. Alarcon, Ms. Alarcon's related as sister to the defendant Alberto Gessa, and his sister's husband is a brother-in-law. Now I recognize that Mr. and Mrs. Alarcon later repudiated that version and insisted that it was part of a hoax to keep Ms. Kohler from being outraged because Alexander Gessa was found in south Florida supposedly playing around with Ms. Becak.... However, the court is convinced that Mr. and Mrs. Alarcon's recanting is not to be credited and that it was motivated to help their kinsman, the defendant Alberto Gessa.

> And in like fashion the court does not credit the trial testimony of Mr. Alexander Gessa in his denial of the existence of any conspiracy with his brother Alberto Gessa, and his insistence that the talk about such a conspiracy and plan and scheme was a cover or a ruse to keep Ms. Kohler from knowing that he was carrying on with Ms. Becak.... I simply don't credit Mr. Alexander Gessa's trial testimony in these respects.

> The court is mindful that Mr. Alexander Gessa bragged in his testimony that he didn't care what his girlfriends thought, that they had to take him as they found him, and as far as he was concerned they

---

1. The sentences of Gessa's coconspirators had not been anchored in a conspiracy to import 2,500 kilograms of cocaine because at the time that the coconspirators were tried or entered guilty pleas, while Gessa was a fugitive, the United States attorneys had not developed the evidence of the scheme to import 2,500 kilograms of cocaine. The appellant was tried after he was apprehended and his coconspirators had been sentenced. It was during the nine months that he was a fugitive that the United States attorneys developed the evidence of the 2,500 kilogram importation scheme. *United States v. Gessa,* 944 F.2d 265, 266–68 (6th Cir.1991). Despite its finding that Gessa had conspired to import 2,500 kilograms of cocaine into the United States, the district court posited that the Guidelines sentence which would result from sentencing based upon this quantity would be "draconian" in view of the lesser sentences of the defendant's accomplices and the fact that the plan never came to fruition. *Id.* at 267.

could all sit at the dining room table on Thanksgiving at the same time. At least that's my recollection and I think I'm fairly correct in summarizing his testimony in that respect.

And so the court is satisfied that his joint claim that it was all a ruse is put forward to help his brother, Mr. Alberto Gessa. I'm equally satisfied that he didn't have to cover his tracks in south Florida with whatever he was doing with Ms. Becak, because I'm equally satisfied that he wouldn't care what Ms. Kohler's reaction might be to his conduct.

Accordingly, I'm satisfied by a preponderance of the evidence that a conspiracy existed, as contended by the government, as to this large quantity of cocaine from the sea, and that the defendant Alberto Gessa was a party to it, and I'm satisfied that the jury verdict which credits the government's theory in this respect beyond a reasonable doubt as reflected by the jury's verdict on count one.

The court also finds that while overt acts are not required with regard to a Section 846 drug conspiracy, that steps were taken to implement this scheme and conspiratorial agreement.

Without unduly extending the findings, the court recalls that Mr. Alexander Gessa had his boat moved from the Middle District of Tennessee to Florida for use in this scheme, and the court is also mindful that [money] was repeatedly wired from the Middle District of Tennessee to Florida by Ms. Kohler in response to requests by Mr. Alexander Gessa related to implementing this plan. Now it may have been that some of those funds were diverted for purposes of pleasure, and that all of them weren't expended for the business of conspiracy. But that was the purpose for which they were sent, the funds were sent to Florida by wire transmission.

Now turning to the defendant's intention, the court finds that the record evidence in this case supports by a preponderance of evidence his intention to participate in this scheme. The record's clear that there was an agreement to supply cocaine between Mr. Alberto Gessa and his brother Alexan-

der Gessa. As I recall the testimony, at one time there was some hard feelings between these two brothers, and Mr. Alexander Gessa for awhile, when he moved his cocaine operation from south Florida to Cheatham County in Ashland City, here in the Middle District of Tennessee, was looking to other suppliers as his source for cocaine in south Florida, and then for reasons that need not be detailed here for these purposes, those sources became unavailable and he renewed his relationship with his brother Alberto Gessa, who became a principal supplier. The record evidence is clear that Mr. Alberto Gessa did supply the Alexander Gessa, Tennessee, cocaine operation.

And so the court is convinced by a preponderance of the evidence of his ability to participate in this conspiratorial scheme. Now on the question of his capability, at the trial of this case the court permitted the government to introduce certain 404(b) material related to prior acts of misconduct. This evidence proved that the defendant, Mr. Alberto Gessa, had the capability of traveling out [of] the port of South America [sic—south Florida?] to the Cayman Islands, and specifically this Green Turtle Cay Island, and take on board spatial kilogram quantities of cocaine. On one of these trips it was estimated that he took on board 257 kilograms and on another trip it is estimated that he brought back about 300 kilograms.

So the court is convinced by a preponderance of the evidence that Mr. Alberto Gessa knows how to travel across the seas and find his way out of the port in Florida and into the Cayman Islands. And while it certainly seems as a matter of common sense that the transshipment of bales, if that's how it comes, of cocaine from one boat tied along to another is easier than perhaps picking up a bobbing bale of cocaine at sea, the fact remains that the evidence in this record supports a finding that Mr. Alberto Gessa is able to navigate and handle them on the seas.

So, in conclusion, the court is showed by ample evidence of both his intention and capability of participating in this conspira-

torial agreement to import these quantities of cocaine, the range of 2500 kilograms, and these findings are supported by the evidence in this record.

Based on the foregoing, I find that the base offense level is 36, and allowing for a two-level adjustment for obstruction of justice, based upon the defendant's evasion of apprehension, the court finds that the total offense level is 38, and the criminal history category is [I], and that the resulting guideline range is 235 to 293 months. Transcript of July 8, 1994 Resentencing Hearing, *J.App.* at 245–50.

 The government bears the burden of proving the quantity of drugs chargeable to a defendant for sentencing purposes by a preponderance of the evidence. *United States v. Robison,* 904 F.2d 365, 371 (6th Cir.), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). Like other factual findings, the sentencing court's drugs quantity determination is reviewable only for clear error. *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). The appellate courts generally do not review the district court's determinations regarding witness credibility. *See, e.g., United States v. Turner,* 995 F.2d 1357, 1362 (6th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 282, 126 L.Ed.2d 232 (1993). A review of the record as a whole disclosed that the findings of the lower court quoted *supra* were supported by sufficient evidence, which evidence bore more than a "minimum indicium of reliability beyond mere allegation[,]" *see Robison,* 904 F.2d at 371, and therefore those findings were not clearly erroneous. In turn, those non-erroneous findings were sufficient to support the sentence imposed, and accordingly the judgment of sentence rendered by the district court is hereby **AFFIRMED.**