**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Larry HICKS, Defendant–Appellant.**

**No. 99–6457, 99–6458.**

United States Court of Appeals,
Sixth Circuit.

May 15, 2001.

Before KRUPANSKY, BOGGS, and BATCHELDER, Circuit Judges.

PER CURIAM.

Defendant–Appellant Larry Hicks has appealed his sentence for drug trafficking in violation of 21 U.S.C. §§ 841(a)(1) and 846. He has argued that the district court misapprehended the Federal Sentencing Guidelines in determining the amount of drugs for which he should be punished, and in denying him a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f)(5) and U.S.S.G. § 5C1.2.[1]

On February 18, 1999, a grand jury sitting in the Eastern District of Tennessee indicted Hicks on three counts of possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On February 25, 1999, Hicks was charged by indictment (along with Stephen Wayne Brock, Lawrence Smith and Dickie Frankie Messer) in the Eastern District of Kentucky with one count of distribution of, and possession with intent to distribute, co-caine in violation of 21 U.S.C. § 846. On June 11, 1999, Hicks pled guilty to the single count in the Kentucky indictment. On June 22, 1999, he consented to the transfer of the Tennessee case to the Eastern District of Kentucky to be consolidated with the Kentucky case for sentencing. On July 21, 1999, Hicks pled guilty to the three counts listed in the Tennessee indictment pursuant to a plea agreement he reached with the government on May 18, 1999.

Hicks, Messer, and Brock engaged in a series of transactions involving cocaine from July, 1998 to January, 1999. Messer and Brock claim the amounts they purchased from Hicks exceeded nine kilograms. Hicks has disputed that figure, contending that he had sold about one-and-one-half kilograms of cocaine to Messer and Brock. On January 9, 1999, Messer was arrested, when he delivered five ounces to Brock. Messer agreed to cooperate with the authorities. He and Brock arranged two transactions with Hicks, involving 295 grams of cocaine. In the course of these transactions, the authorities were able to record a number of telephone conversations between Messer and Hicks. Significantly, in these recorded conversations. Messer explains to Hicks why he is purchasing lesser quantities of cocaine (ounces as opposed to kilograms). The transactions and recorded phone calls culminated in the relevant indictments. Upon Hicks's arrest, 980 grams of cocaine were discovered at his residence.

On October 6, 1999, the district court held a sentencing hearing at which both Hicks and the government objected to recommendations contained in the presentence report. The presentence report rec-

---

1. The safety valve reduction limits the applicability of mandatory minimums in certain statutorily-defined cases. Hicks faced a mandatory minimum of ten years which displaced the normal guidelines calculus by virtue of the lower court's finding that he trafficked in excess of five kilograms of cocaine. *See* 21 U.S.C. § 841.

ommended that Hicks be charged with 9.275 kilograms of cocaine and that he be allowed the benefit of a safety valve reduction. Hicks challenged that calculation's reliability because the Probation Office had based it solely on the statements of a coconspirator, Messer. In turn, the government opposed the safety valve reduction as unwarranted because Hicks had not been truthful about the volume of cocaine in which he trafficked. The lower court conducted an extensive hearing at which Messer and Brock testified[2] as to the amounts of cocaine which were purchased from Hicks in numerous transactions. The court then found that Hicks was responsible for at least 9.275 kilograms of cocaine.[3] The court also discredited Hicks' assertions about the amounts of cocaine to which he confessed responsibility; accordingly, it denied his request for a safety valve reduction. This appeal followed.

■ Initially, Hicks has challenged the district court's calculation of the weight of cocaine attributed against him. The sentencing court's calculation must be supported by a preponderance of the evidence.

See *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.1990). If necessary, the court may estimate the amount involved. See *United States v. Ward*, 68 F.3d 146, 149 (6th Cir.1995). However, the supporting "evidence must have a minimal level of reliability beyond mere allegation, and the court should err on the side of caution in making its estimate." See *United States v. Owusu*, 199 F.3d 329, 338–39 (6th Cir.2000) (citations and quotation marks omitted). The court's estimate may rely on the testimony of a co-conspirator. See *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir.1998). A lower court's finding as to the amount of drugs for which the defendant should be held responsible can be overturned only upon a showing of clear error. See *United States v. Berry*, 90 F.3d 148, 152 (6th Cir.1996). In reviewing the propriety of the calculation, "[w]e defer to a district court's credibility determinations unless they have no foundation." See *Owusu*, 199 F.3d at 339.

Hicks has argued that his dealings with Messer[4] were limited to sales of *ounces* of cocaine. This contention stands in con-

---

2. Hicks did not testify at the sentencing hearing.

3. Judge Coffman noted:
   And the Court specifically finds that after the first six instances which Mr. Messer recited, which had to do with ounces, he recited a seventh, which was one kilo at the price of $29,500; an eighth, which was one kilo at the same price; a ninth, which was one kilo at the same price; a tenth, which was one kilo—and I'm not sure I have a price on that; an eleventh, which was one kilo at $30,000, a twelfth, which was the day after the eleventh, one kilo at $30,000; a thirteenth, a month or so later—another kilo price not clear to me, or unknown; a fourteenth, one kilo two or three weeks later, at $30,000. And without getting into the change of the ounces. I'm going to say that -that is the eight kilos which I rely. Adding these eight kilograms to the 980 grams discovered during a search of Hicks'

residence and the 295 grams involved in the two transactions undertaken by Messer and Brock with Hicks after they agreed to cooperate with the authorities. Judge Coffman arrived at the 9.275 kilogram amount.

4. Hicks has argued that Messer's testimony is unreliable because Messer has admitted to being a drug addict and that Messer has been fuzzy about the dates of purchases. While intoxication can cloud the memory of a witness, Messer has sufficient corroboration in Brock's testimony and the recorded telephone conversations. As for the recalling of the actual dates of purchase, the lower court found that there were numerous transactions from July, 1998 to January, 1999, not remembering actual dates does not diminish Messer's credibility to a degree that would cast doubt on the calculation made by the lower court.

**408**

trast to Messer's testimony, which related numerous *kilogram* transactions. In crediting Messer's testimony, the lower court expressly relied on recorded telephone conversations which demonstrated the familiarity Hicks had with Messer. The lower court also found that, in the recorded telephone conversations. Messer repeatedly refers to a need to build slowly back up to large purchases because he and Brock were financially exhausted. The lower court found that this statement demonstrated a history of purchases which were greater than single ounces. The lower court also found that the testimony of Messer and Brock were nearly identical as to the nature of the transactions.[5] The lower court did not err in relying on Messer's testimony, because in light of the corroboration provided by the recorded telephone conversations and Brock's testimony, reliance on Messer's testimony was not without foundation. *See Owusu,* 199 F.3d at 339.

■ Next, Hicks has argued that he is entitled to a safety valve reduction under the Federal Sentencing Guidelines.[6] "We review a district court's interpretation of a statute or guideline provision under a *de novo* standard and a court's factual determination of whether a statute or guideline applies in a particular case under a clearly erroneous standard." *See United States v. Adu,* 82 F.3d 119, 124 (6th Cir.1996) (citations omitted). "This determination 'is a fact-specific one and will depend on credibility determinations that cannot be replicated with the same accuracy on appeal.'" *Id.* (quoting *United States v. Rodriguez,* 69 F.3d 136, 144 (7th Cir.1995)).

U.S.S.G. § 5C1.2, the sentencing guideline [7] governing the safety valve reduction, details the findings necessary to support a downward departure:

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has *truthfully provided* to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G § 5C1.2 (emphasis added).

The government has conceded that Hicks has satisfied the first four criteria; it has disputed the fulfilment of the fifth

---

**5.** Brock rarely participated directly in the narcotics transactions between Messer and Hicks, electing to remain in the car during the purchases.

**6.** By returning the sentencing calculus to the guidelines (and withdrawing the effect of the

mandatory minimum of ten years), the safety valve reduction would have provided Hicks with a guideline range of seventy to eighty-seven months.

**7.** This guideline tracks 18 U.S.C. § 3553(f)(5).

criterion. The lower court expressly found that Hicks was not truthful with the court in describing the transactions which form the relevant conduct. *See Adu,* 82 F.3d at 124 (The safety valve provision "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses."); *United States v. Reynoso,* 239 F.3d 143, 146 (2d Cir.2000) ("[A] defendant seeking to qualify for relief under the safety valve provision must prove *both* that the information he or she provided to the Government was objectively true and that he or she subjectively believed that such information was true."). The trial judge based that finding on the large discrepancy between the amount which Hicks admitted versus the amount which the court ultimately found to be supported by the evidence.

In response, Hicks has asserted that he has been indeed been truthful about the amount of cocaine which he had trafficked and that Messer cannot be trusted. However, credibility findings by the lower court are rarely disturbed. *See United States v. Gessa,* 57 F.3d 493, 496 (6th Cir.1995). The lower court expressly found that the amount of cocaine which Hicks had trafficked far exceeded the amount to which Hicks has admitted. Hicks has not persuaded the reviewing court that clear error infected that finding.

The judgment of the district court is therefore AFFIRMED.