NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0180n.06

No. 24-1431

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 01, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| TERRENCE TERRIAL IZEAR TURNER, | ) ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: CLAY, NALBANDIAN, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Terrence Terrial Izear Turner pled guilty to one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). The district court sentenced Defendant to 165 months of imprisonment, finding that he qualified for sentencing enhancements pursuant to U.S.S.G. §§ 2K2.1(b)(1)(A), (4)(A), (6)(B). Defendant now appeals his sentence. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I.     BACKGROUND

On July 9, 2023, Defendant and three other associates met in Benton Harbor, Michigan. At around 10:30 P.M., Defendant and others began to shoot at a silver sedan as it passed by on a roadway. One of the Defendant's associates was shot by individuals in the sedan as Defendant fled the scene. Several weeks later, on July 20, 2023, Defendant was visiting a convenience store in Benton Harbor when a physical altercation broke out near him. Defendant then fired a handgun in the air and fled the scene.

The police began to investigate Defendant. After reviewing his Facebook account, in which Defendant discussed his gun ownership and shared pictures of a silver sedan with bullet holes, officers executed a search warrant of Defendant's sister's apartment. There, officers found a Glock 19X 9mm handgun and an extended magazine containing 29 rounds of ammunition. Police then arrested Defendant, and during his questioning by police, Defendant admitted to possessing another handgun: a Glock 10mm pistol. The police later discovered that Defendant had possession of a third gun, as he had given one of his associates a Taurus Spectrum .380 pistol. Officers then recovered the .380 pistol from the associate's house.

Defendant had several conversations with his sister and uncle while in jail. Those conversations involved guns, including a request from Defendant to his uncle to sell one of Defendant's guns. Law enforcement searched Defendant's uncle's house after hearing these conversations. In the course of their search, police uncovered that Defendant had possession of a fourth gun, as Defendant's uncle revealed that Defendant had provided him with a malfunctioning Taurus PT111 G2 handgun. The uncle told police that Defendant had instructed him to fix the firearm so it could be sold. The uncle had taken the gun to a friend to see if he could fix it. Officers later recovered the gun from the uncle's friend and learned that the handgun had been reported stolen in 2015.

On October 4, 2023, a grand jury returned an indictment charging Defendant with (1) felon in possession of a Glock Model 19X 9mm pistol, and (2) felon in possession of a Taurus Spectrum .380, both in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). Defendant pled guilty to Count 1 and the government agreed to dismiss Count 2. The presentence report recommended a sentence enhancement for possessing three to seven firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(A). The enhancement was specifically based on (1) the Glock 19X 9mm handgun recovered at Defendant's

sister's apartment; (2) the Glock 10mm pistol that Defendant admitted to possessing; (3) the Taurus Spectrum .380 handgun retrieved from Defendant's associate's house; and (4) the Taurus PT111 G2 handgun recovered after a discussion with Defendant's uncle. The presentence report also recommended an enhancement for using a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Finally, the report recommended an enhancement for a stolen firearm, pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the Taurus PT111 G2 handgun was reported stolen.

Defendant argued that he was entitled to a variance. He specifically stated that his family ties, focus on the future, desire to obtain an education and a job, and commitment to spending time with his children all justified a sentence at or below the low end of the Guidelines range. Defendant also objected to the presentence report's enhancement recommendations. He first argued that the three-to-seven firearms enhancement was inappropriate, stating that while he admitted to possessing the Glock 19X 9mm, there was insufficient evidence to support his possession of the other three weapons. Second, Defendant posited that because there was insufficient evidence showing that he possessed the Taurus PT111 G2 handgun, the court could not apply the stolen firearm enhancement. Finally, he argued that the court could not apply the firearm in connection with another felony offense enhancement because there was insufficient evidence demonstrating that he was involved with the July 9, 2023, shooting.

The district court overruled Defendant's objections. The court determined that there was a preponderance of evidence showing that Defendant had possession of all four guns, that the Taurus PT111 G2 handgun was stolen, and that Defendant had been involved in the July 9 shooting. The court then turned to the sentencing factors, noting that Defendant has a long criminal history that includes firearm possession, drug possession, attempted larceny, use of a firearm in connection

with the attempted larceny, multiple battery convictions, and domestic violence. In summarizing Defendant's behavior, the court stated: "Mr. Turner, you've been sentenced to jail, you've been sentenced to probation, you've been sentenced to prison, and nothing seems to have changed your behavior. And certainly being under the supervision of a court didn't change your behavior at least during that time." Sent'g Tr., R. 44, Page ID #288. In fact, the court highlighted that Defendant continued his illegal possession of firearms even after one of Defendant's brothers had been killed by gun violence. The court then imposed a 165-month sentence.

## II. DISCUSSION

### A. Standard of Review

"We review a sentence's procedural reasonableness under the abuse-of-discretion standard." *United States v. Johnson*, 79 F.4th 684, 705 (6th Cir. 2023) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). "An abuse of discretion occurs if a court commits a 'significant procedural error,' such as the improper 'calculation of the advisory sentencing Guidelines.'" *Id.* (citation omitted) (first quoting *Gall*, 552 U.S. at 51; then quoting *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009)). We also review a sentence's substantive reasonableness for abuse of discretion. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). "A claim that a sentence is substantively unreasonable is a claim that a sentence is too long. . . . Needful to say, this is a matter of reasoned discretion, not math, and our highly deferential review of a district court's sentencing decisions reflects as much." *Id.*

To determine whether a defendant possessed a weapon, we review for clear error. *See United States v. Barnes*, No. 23-1974, 2024 WL 4298918, at *2 (6th Cir. Sept. 26, 2024). "In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, we review the district court's factual findings for clear error and accord due deference to the district court's determination that the

firearm was used or possessed in connection with the other felony, thus warranting the application of the enhancement." *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (cleaned up). We have emphasized that "when a defendant 'challenges the district court's determination that the firearm was used or possessed in connection with the other felony offense . . .' that inquiry is necessarily 'fact-specific' and thus better examined by the district court." *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019) (quoting *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011)) (cleaned up).

## B. Analysis

### 1. Procedural Unreasonableness

Defendant argues that the district court was procedurally unreasonable in applying the three sentencing enhancements.

#### a. *U.S.S.G. § 2K2.1(b)(1) Enhancement*

Defendant first turns to the U.S.S.G. § 2K2.1(b)(1) enhancement. Section 2K2.1(b)(1) raises a defendant's offense level "[i]f the offense involved three or more firearms." U.S.S.G. § 2K2.1(b)(1). According to Defendant, the presentence report was based on unreliable evidence to support this enhancement. Defendant's argument is, at its core, a factual dispute. But as we have recognized, fact-specific determinations regarding firearm possession are "better examined by the district court." *Shanklin*, 924 F.3d at 919. And the district court had ample evidence to support its conclusion.

First, the district court had sufficient grounds to conclude that Defendant possessed the Glock 10mm pistol. The strongest evidence on this point is that, according to the officer who testified at the sentencing hearing, Defendant specifically admitted to possessing the gun. We have found that where a defendant admits the underlying conduct to officers, that is sufficient to uphold

a district court's application of a sentencing enhancement. *See United States v. Batt*, No. 23-1757, 2024 WL 2874574, at *2 (6th Cir. June 7, 2024). The district court was also presented with additional evidence, including: (1) Facebook posts showing Defendant with the gun, (2) video footage showing Defendant at the scene of the July 9 shooting, where officers later recovered the gun, and (3) messages from Defendant's Facebook account regarding purchasing 10mm ammunition. Under our deferential standard of review, this copious list of evidence was more than sufficient for the district court to conclude that Defendant possessed the Glock 10mm pistol. *See Barnes*, 2024 WL 4298918, at *2 (finding a sentencing enhancement appropriate where the district court was presented with evidence that the defendant shared photographs of the gun in question on Facebook).

Second, the district court was within its discretion to find that Defendant possessed the Taurus Spectrum .380 handgun. The government presented evidence at sentencing showing a photograph of the firearm on Defendant's phone. Five days after this picture was taken, Defendant told an individual via Facebook that Defendant was going to transfer the .380 pistol to the individual. Officers later searched this individual's residence and discovered the weapon. The individual also confirmed that Defendant had provided him with the gun. We have found that the "credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing, which will survive 'clear error' review, if that evidence bears more than a 'minimum indicium of reliability.'" *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004) (quoting *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 2004)). In this instance, an individual confirmed to police that Defendant possessed the Taurus Spectrum .380 handgun. This confirmation "bears more than a 'minimum indicium of reliability'" because there is corroborating evidence from Defendant's Facebook messages and the photograph on Defendant's phone. *Id.*

(quoting *Gessa*, 57 F.3d at 496). This is therefore sufficient under our deferential standard of review to find that Defendant possessed the Taurus Spectrum .380 handgun.

Third and finally, there were ample grounds to support the district court's finding that Defendant possessed the Taurus PT111 G2 handgun. While he was in jail, Defendant made several phone calls to his sister and uncle. In one conversation with his sister, he discussed repairs his uncle was making to a gun Defendant had provided. In another conversation, Defendant discussed these repairs with his uncle. Police then spoke with the uncle, who confirmed that Defendant had given him a Taurus PT111 G2 to repair. The uncle also stated that he could not fix the gun, so he gave it to another individual. Police then recovered the firearm from that individual. As explained above, the testimony of a single credited witness is enough to support a preponderance of the evidence finding at sentencing. *Id.* In this instance, the uncle's admission that Defendant provided him with the Taurus PT111 G2 is credible: the statement is supported by the phone call evidence and the fact that the uncle's story was corroborated once the officers located the gun at another individual's residence. This proof is therefore sufficient to sustain the district court's Taurus PT111 G2 finding.

In summary, there was more than ample grounds for the district court to conclude that each of the firearms in question was possessed by Defendant. We are to afford deference to the district court on this issue, and the evidence exceeds the minimum necessary to uphold the court's findings.

### b. U.S.S.G. § 2K2.1(b)(4)(A) Enhancement

U.S.S.G. § 2K2.1(b)(4)(A) enhances a sentence if "any firearm was stolen." A defendant need not know that the firearm was stolen for this enhancement to apply. U.S.S.G. § 2K2.1 cmt. n. 8(B); *see United States v. Davy*, 433 F. App'x 343, 345 n.1 (6th Cir. 2011).

The district court applied this enhancement to Defendant because he possessed the Taurus PT111 G2 handgun, which was discovered by the police to have been stolen. As outlined above, the district court had sufficient grounds to conclude that Defendant had possession of this firearm. Additionally, Defendant does not appear to challenge whether the firearm was stolen, and there is no evidence in the record to suggest otherwise. The district court was therefore within its discretion to apply this enhancement.

### c. *U.S.S.G. § 2K2.1(b)(6) Enhancement*

U.S.S.G. § 2K2.1(b)(6) provides that a sentence may be enhanced if a defendant "used or possessed any firearm or ammunition in connection with another felony offense." The government must establish "a nexus between the firearm and an independent felony" to apply this enhancement. *United States v. Taylor*, 648 F.3d 417, 431 (6th Cir. 2011). "Thus, the firearm must have served some purpose in relation to the other offense, such as emboldening the defendant in committing it. The burden to show a nexus between the firearm and the other felony is not onerous." *United States v. Henry*, 819 F.3d 856, 868 (6th Cir. 2016) (cleaned up).

The district court applied Section 2K2.1(b)(6) to Defendant because Defendant used the Glock 10mm pistol in connection with the July 9, 2023, shootings. Defendant argues that this enhancement is inapplicable because the government's evidence is unreliable. This argument is unconvincing. As discussed above, there is sufficient evidence to establish that Defendant possessed the Glock 10mm handgun. Additionally, officers discovered 10mm casings at the site of the shooting, which lab analyses confirmed came from the same firearm. Video footage also depicts Defendant at the scene of the shooting.[1] Furthermore, less than three weeks after the

---

[1] As described in the district court's sentencing hearing, "Mr. Turner . . . is on the shorter side, approximately 5 foot 5, 5 foot 6, heavyset, over 300 pounds. So he has a distinctive physical

shooting, Defendant Facebook messaged one of his associates about the shooting, stating: "man ion remember nun from that night bih *10mm* loud asf." Sent'g Tr., R. 44, Page ID #219 (emphasis added). Around the same time, Defendant also sent Facebook messages requesting 10mm ammunition. Finally, on July 13, 2023, Defendant sent a photograph over Facebook that depicted a silver sedan with bullet holes.

The totality of this evidence leads to a logical inference: Defendant possessed the Glock 10mm pistol and used that firearm during the July 9 shootings. That inference draws a direct "nexus between the firearm and [the] independent felony" of the illegal July 9 shootings. *Taylor*, 648 F.3d at 431. Accordingly, the district court was well within its discretion to apply the 2K2.1(b)(6) enhancement.

## 2. Substantive Unreasonableness

Defendant next argues that his sentence was substantively unreasonable because the 165-month sentence was too long. There is, however, little to support this assertion. In reviewing the sentencing hearing transcript, it is evident that the district court carefully weighed the sentencing factors and Defendant's mitigating circumstances. There is little to suggest that the district court placed too much weight on some factors, or that the 165 months was excessive. In fact, the sentence fell squarely within the Guidelines' range. As we have noted, sentences that fall within the advisory range are presumptively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

---

appearance." Sent'g Tr., R. 48, Page ID #201. He is thus very easily identifiable in the video footage.

Defendant attempts to support his argument with several unpersuasive points. First, he argues that the sentence was based on erroneous sentencing enhancements. But as discussed above, those enhancements were proper exercises of the district court's discretion.

Second, Defendant points to the sentence of one of his associates who was involved in the July 9 shooting. He notes that the associate only received a 71-month sentence, despite the fact that the individual was both positively identified as a shooter and was shot during the escapade. This argument runs counter to our precedent. We routinely rejected such comparator arguments, noting that the proper analysis is *national* disparities in sentencing, rather than disparities among individuals. *United States v. Hernandez*, No. 22-1677, 2023 WL 3963627, at *4 (6th Cir. June 13, 2023) (collecting cases).

Third, Defendant argues that the district court failed to consider relevant factors, namely Defendant's mitigating evidence. That, however, is an inaccurate reading of the district court's determination. While the district court did not list every possible mitigating factor in Defendant's favor, the court noted a number of them, including Defendant's attempt to obtain a GED and lack of substance abuse. Furthermore, the district court is not required to discuss every possible detail that benefits Defendant. *United States v. Johns*, 65 F.4th 891, 894–95 (6th Cir. 2023) ("[W]e have never required district courts to engage in a formulaic point-by-point refutation of a defendant's mitigation arguments." (citation and internal quotation marks omitted)).

Fourth, Defendant asserts that the district court relied too heavily on "impermissible factors." Appellant Br., ECF No. 16, 26. He states that the district court placed too much emphasis on Defendant's participation in the shooting, noting that the court held Defendant "responsible for a shooting that *others* precipitated." *Id*. It is unclear why the district court's discussion of Defendant's participation in the shooting is "impermissible." Video footage quite clearly shows

Defendant participating in the shooting, and whether Defendant was the first to fire a gun is irrelevant to his participation in the event. Defendant further argues that the district court relied on unreliable evidence to establish that Defendant participated in the shooting and that he possessed multiple firearms. But as discussed earlier, there *was* sufficient evidence for the court to come to such conclusions. Finally, Defendant states that the court "leaned on the death of [Defendant's] brother." *Id.* at 27. This is a stretch. The court merely referenced Defendant's brother's death and the court's confusion that Defendant would participate in violent, gun-related acts after experiencing such an event. There is also no case law to suggest that the court could not mention such a fact.

In summary, the district court was well within its discretion to apply the within-Guidelines sentence of 165 months. None of Defendant's arguments to the contrary are convincing.

## III.    CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.