*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0040P (6th Cir.)
File Name: 04a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 02-5794

MICHAEL SHANE REID,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 01-00065—Thomas G. Hull, District Judge.

Argued: November 13, 2003

Decided and Filed: February 6, 2004

Before: KRUPANSKY, MOORE, and ROGERS, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:** Stephen M. Kissinger, FEDERAL DEFENDER
SERVICES, Knoxville, Tennessee, for Appellant. Guy W.
Blackwell, ASSISTANT UNITED STATES ATTORNEY,
Greeneville, Tennessee, for Appellee. **ON BRIEF:** Nikki C.
Pierce, FEDERAL DEFENDER SERVICES, Greeneville,
Tennessee, for Appellant. Guy W. Blackwell, ASSISTANT

UNITED STATES ATTORNEY, Greeneville, Tennessee, for
Appellee.

———————

**OPINION**

———————

KRUPANSKY, Circuit Judge. The defendant-appellant,
Michael S. Reid ("Reid"), has contested his sentence imposed
pursuant to his guilty-plea convictions for possessing a
firearm following a felony conviction and fraudulent misuse
in interstate commerce of another person's identity. Reid has
asserted that the sentencing court abused its discretion (1) by
vacating an order denying a sentencing enhancement and
permitting the government, allegedly out of time, to introduce
testimony which resulted in the application of the sentencing
enhancement; and (2) by finding, for sentencing purposes by
a preponderance of the evidence, that the defendant had used
his illegally-possessed pistol to commit criminal acts which
were tantamount to the state-law felony offense of aggravated
assault, irrespective of the state court's dismissal of the felony
charge for those acts.

Sometime prior to November 15, 2000, Reid stole a
driver's license and a social security card which belonged to
a co-worker, Richard Anthony Rescha ("Rescha") of Antioch,
Tennessee. Reid used those documents to successfully pose
as Rescha, thereby allowing him to exploit Rescha's
presumably comparatively favorable credit standing and
overall record. Between November 15, 2000, and March 1,
2001, by attaining credit financing, and in at least one
instance by negotiating a worthless check, Reid purchased, in
Rescha's name, a diamond engagement ring and a timepiece
collectively worth $2,144.00; a 1998 Chevrolet Silverado
truck valued at $20,591.55; a 1999 GMC Sierra pickup truck
priced at $20,998.65; a Kodiac Quad Runner truck which was
sold for $5,871.47; a .22 caliber rifle; and a .22 caliber
Heritage pistol (the two firearms cumulatively cost

approximately $200.00). During February 2001, local authorities in Morristown, Tennessee, notified the United States Secret Service office in Knoxville that Reid had falsely assumed Rescha's identity to purchase the above-described jewelry as well as the Silverado and Sierra trucks.

Shortly thereafter, Reid's crime spree was foiled by his domestic misbehavior. During the early morning of March 1, 2001, Reid's cohabitating fiancée, Merica L. Skelton ("Skelton"), reported to the local police that, on the previous day (February 28, 2001), Reid, during a fit of rage, had choked her and pressed a loaded and hammer-cocked .22 caliber handgun against her forehead, accompanied by his verbal threat to "blow her f___ing brains out." That weapon was later identified as the .22 caliber Heritage pistol which Reid, while impersonating Rescha, had unlawfully purchased at a pawn shop on December 20, 2000.

Later that same day (March 1, 2001), police officers stopped Reid for traffic violations while he was driving the 1998 Silverado truck. Those constables arrested him for driving without a valid operator's permit, and on an outstanding Tennessee arrest warrant for the February 28, 2001 armed aggravated assault. The arresting patrolmen seized the two firearms from inside the Silverado, plus Rescha's driver's license and social security identification from Reid's clothing. Later that day, Secret Service agents interviewed the defendant at the Sevier County Jail. Reid confessed that he had stolen Rescha's motor vehicle operator's license and social security card, and had used them to facilitate his purchases, in Rescha's name, of the jewelry, the three trucks,[1] and the two firearms.

---

[1]Prior to the March 1, 2001 interrogation, the Secret Service had been unaware of Reid's fraudulent abuse of Rescha's identity in connection with his purchase of the Quad Runner vehicle.

On November 26, 2001, Reid pleaded guilty to one count of illegally possessing a firearm following a felony conviction,[2] in offense to 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and to one charge of theft of another's identifying documents with intent to obtain items of value exceeding $1,000, in violation of 18 U.S.C. §§ 1028(a)(7) and (b)(1)(D). A charge of uttering a false written statement to a pawn shop in connection with a firearm purchase, 18 U.S.C. §§ 922(a)(6) and 924(a), was dismissed.

Subsequently, the defendant objected to a part of the probation office's January 17, 2002 presentence investigation report ("PSR"), by which it had recommended a four-level enhancement under U.S.S.G. § 2K2.1(b)(5)[3] for using one of the two subject illegally-possessed firearms "in connection with another felony offense," to wit, the February 28, 2001 state-law felonious aggravated assault against Skelton. Reid objected to that advisory, protesting that, because the state court had *dismissed* the *felony* assault charge against him as part of a plea bargain agreement whereby he pleaded guilty to *misdemeanor* assault for the February 28, 2001 offense, any offense-level increase in his instant prosecution for that conduct would be improper.

---

[2]The record disclosed that, prior to his subject federal prosecution, Reid has sustained several felony convictions in state courts on charges ranging from driving while intoxicated, carrying a weapon inside a licensed liquor establishment, and assault.

[3]Guidelines section 2K2.1 controls offense level computations for certain federal firearms offenses, including basic unlawful possession. That provision recites, in material part:

> If the defendant used or possessed any [illegally possessed] firearm or ammunition in connection with another felony offense . . . increase [the offense total] by **4** levels.

U.S.S.G. § 2K2.1(b)(5) (2001). (Bracketed material added; boldface in original).

On March 18, 2002, the district judge presided over a hearing on the defendant's objections to the PSR. At that time, the government responded that its proposed U.S.S.G. § 2K2.1(b)(5) "felonious use" enhancement was justified because sentencing facts, including the facts which would satisfy the statutory elements of a predicate felony offense necessary to trigger the subject guideline provision, need be proved by the prosecution merely by a *preponderance of the evidence*; therefore, *the absence of a "beyond-a-reasonable-doubt" conviction* of that dismissed state-law felony assault charge was immaterial. However, the sole evidence supporting the alleged felonious assault which the AUSA presented at the March 18, 2002 proceeding was an affidavit executed by Skelton; the prosecution's efforts to subpoena Skelton for the March 18, 2002 hearing had been unsuccessful. Accordingly, the presiding judge continued the hearing until March 25, 2002, to permit the parties sufficient time to marshal their evidence, including live witnesses, pertinent to the disputed felonious assault.

Nevertheless, prior to that rescheduled hearing, on March 21, 2002, the trial judge entered an order *sustaining* Reid's objection to the contested "felonious use" enhancement, declaring that the United States had failed to prove sufficient supportive facts by a preponderance of the evidence. Subsequently, the prosecution moved for reconsideration of that March 21, 2002 order, asserting that it was prepared to offer probative testimony from Skelton. The government explained that, prior to the March 18, 2002 hearing, it had prepared only to argue the *legal effect* of Reid's state court misdemeanor assault conviction on the government-requested "felonious use" sentencing enhancement, but *not* the *factual proof* of the underlying armed assault, because it had not construed Reid's objection to encompass any opposition to the PSR's recitation of the material facts.

Reid replied that the court had given the government a fair opportunity to proffer its evidence at the March 18, 2002

hearing, and therefore it should not be permitted a second chance to prove its "felonious use" claims after the trial court had ruled against it. However, the district court granted the government's motion, and set an evidentiary sentencing hearing for June 3, 2002. On that day, over Reid's continuing objection to the court's re-opening of the proof relevant to his alleged "felonious use" of one of his illegally-possessed firearms, the trial court ruled that it would allow both adversaries to "put on anything" relevant to that contested sentencing question. The court accepted testimony from three prosecution witnesses, to wit, the victim Skelton plus two case investigators, namely ATF Agent Greg Moore ("Moore") and Secret Service Agent Ted Kirkman ("Kirkman").[4] The defense offered testimony by Reid.

At the evidentiary hearing, Skelton testified *inter alia* that, on February 28, 2001, around 2:00 p.m., while at home, Reid became angry with her because she refused to drive him to a liquor store. His fury climaxed in a violent rampage which lasted for many hours. The victim revealed that, at one point, Reid inserted the barrel of his .22 caliber handgun into his own mouth, and then pressed it against her head while threatening to kill her. Reid also destroyed their coffee table, and threatened the physical safety of Skelton's young daughter. After the lapse of approximately twelve hours after the beginning of their argument, Skelton and her daughter escaped the house. Skelton telephoned the police, and then went to the station, where she completed an arrest warrant affidavit by verbally answering questions posed by a state judicial magistrate; her responses were transcribed into a document which Skelton ultimately signed. Contrary to a statement contained in that affidavit, Skelton explained on the witness stand that she had *not* told the magistrate that Reid

---

[4]Because neither Agents Moore nor Kirkman could offer eyewitness testimony about Reid's conduct on February 28, 2001, their testimony was not critical to the trial court's resolution of the sentencing enhancement controversy.

had forced the gun into *her* mouth, but instead she had told that official that Reid had placed it into *his own* mouth. Skelton also identified the .22 caliber Heritage pistol implicated in the instant prosecution as the firearm deployed by Reid while threatening her life on February 28, 2001.

On cross-examination, the defense attorney endeavored to assail the victim's credibility by illuminating evident discrepancies in certain details reported in her affidavit as compared to her witness-stand attestations; and by eliciting admissions from her of voluntary post-assault contacts which she had with Reid, as well as her petty criminal record.

Subsequently, Reid took the witness stand. He testified, among other things, that he had merely "verbally assaulted" his fiancée on February 28, 2001, and accordingly pleaded guilty in state court to *misdemeanor* assault for that incident. The defendant claimed that Skelton had admitted to the Tennessee prosecutor that Reid did not use a handgun to assault her, which confession, according to Reid, prompted the state to reduce the charge against him to misdemeanor simple assault. Reid denied that he displayed, or even actively possessed, any weapon during the February 28, 2001 altercation; and he further denied that he had verbally threatened serious violence against Skelton or her child. The defendant conceded that he has an alcohol problem, and that he had been drinking prior to the February 28, 2001 confrontation; but he denied that liquor had played a role in his conduct on the day in question. Rather, Reid claimed that a dispute over finances had triggered the confrontation with his cohabitating fiance.

After the evidentiary hearing, the trial court journalized a June 6, 2002 written order which assessed the testimony of the various witnesses, and resolved:

Based on their testimony as a whole, and their demeanor in open court, the Court finds that Merica Skelton is a more credible witness than the defendant.

The Court also finds that an aggravated assault using the .22 caliber handgun was in fact committed by the defendant on Ms. Skelton on February 28, 2001. The Court takes judicial notice that in Tennessee an aggravated assault is a felony punishable by more than one year.

The Court finds that the government has [met] its burden of proving that this enhancement applies to the instant situation. Therefore, the government's motion for reconsideration of the application of a 4-point enhancement under U.S.S.G. § 2K2.1(b)(5) for use of a firearm in connection with another felony offense is **GRANTED** for the reasons set out herein.

The four-degree enhancement produced a total offense level of 17, which, when matched with Reid's criminal history category of VI, yielded a guidelines sentencing range of 51 to 63 months in federal prison.[5] U.S.S.G. § 5A (Sentencing Table). On June 10, 2002, the district court imposed concurrent terms of fifty-five months for each of Reid's two counts of conviction, to be followed by three years of supervised release, plus restitution totaling $7,025.00 and a $200.00 assessment. A timely appeal followed.

The defendant's initial assignment of error is that the lower court abused its discretion by re-opening the record after it had previously entered its March 21, 2002 order denying the prosecution's request for the controverted four-level "felonious use" sentencing enhancement by reason of the government's failure of proof, especially given that the government had been afforded a fair opportunity to offer its evidence at the March 18, 2002 hearing which had preceded the court's March 21, 2002 order.

---

[5] Absent the contested four-point offense level increase, Reid's sentencing range would have been 33 to 41 months in prison. U.S.S.G. § 5A (2001) (Sentencing Table).

A trial court's decisions to vacate its prior order, and to reopen the evidentiary record, are examined for abuse of discretion. *See United States v. Wilson*, 27 F.3d 1126, 1129 (6th Cir. 1999). An abuse of discretion occurs "when the reviewing court is firmly convinced that a mistake has been made. A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses [an] erroneous legal standard." *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995). (Quotation marks and citations omitted). Reid, without supporting citation to controlling or even persuasive authority, has endeavored to analogize the district court's re-opening of the evidentiary record, vacating of its prior order, and granting of the government's previously-denied motion to significantly enhance the defendant's offense level, to a hypothetical re-opening of a criminal prosecution following the defendant's acquittal, whereby the defendant is compelled to face re-trial on previously failed charges which, on the government's second attempt, are supported by novel evidence, in violation of the protections of the Fifth Amendment's Double Jeopardy Clause.

That analogy was facially misconceived. No final judgment which might have even arguably been insulated from tampering by double jeopardy principles had been entered in the defendant's favor prior to the trial court's election to permit both adversaries to offer additional evidence relevant to the disputed sentencing issue and its setting aside of the March 21, 2002 order. *See, e.g., Palazzalo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir. 2001) ("The Double Jeopardy Clause protects against a second prosecution for the same offense *after conviction or acquittal*, and against multiple punishments for the same offense.") (emphasis added) (*citing Ohio v. Johnson*, 467 U.S. 493, 498 (1984); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Rather, the ultimately-vacated March 21, 2002 order was merely an interim decree subject to revision, reconsideration, rescission, correction, amendment, adjustment, vacation, substitution, supersedure, modification, annulment, or any

other status change, by the trial court, in the exercise of its sound discretion, at any time prior to the entry of final judgment.[6] *See Wilson*, 27 F.3d at 1129; *United States v. Kolenda*, 697 F.2d 149, 150 (6th Cir. 1983) (per curiam).

In both civil and criminal cases, a trial court is empowered to revisit any of its previous non-final rulings in the light of a perceived error or misjudgment, new relevant information, or even its simple conclusion that it may have acted in ill-considered haste. *See, e.g., Christianson v. Colt Operating Corp.*, 486 U.S. 800, 816 (1988); *Arizona v. California*, 460 U.S. 605, 618 (1983). In the case *sub judice*, the United States had offered two compelling reasons why it had not been prepared to offer factual proof via live witnesses at the March 18, 2002 hearing – (1) the key witness Skelton was unavailable, and (2) the prosecutor had reasonably construed Reid's objection to the PSR as a legal contention that the "felonious use" enhancement was improper absent an actual felony conviction, but not as a denial of the underlying facts. *See United States v. Stafford*, 258 F.3d 465, 475-76 (6th Cir. 2001) (recognizing that a defendant's non-objection to factual assertions contained in the PSR constitutes an admission of the accuracy of those facts), *cert. denied*, 535 U.S. 1006 (2002). Furthermore, at the June 3, 2002 evidentiary hearing, Reid was given a full and fair opportunity to cross-examine

---

[6]On appeal, the United States has argued that this court lacks jurisdiction over the defendant's challenge to the district court's vacation of the March 21, 2002 order because that order was a non-appealable, and now defunct, interim mandate. However, the defendant has challenged his final judgment of sentence by complaining that it was wrongfully determined in light of his purported vested right to the trial court's prior favorable adjudication of the "felonious use" issue. Accordingly, this reviewing court has subject matter jurisdiction over the instant controversy. *See* 18 U.S.C. § 3742(a); 28 U.S.C. § 1291.

the prosecution witnesses and to offer his own rebuttal evidence; therefore, he suffered no unfair prejudice.[7]

---

[7]The Sixth Circuit has explained that a district court, in a criminal case, may, in its sound discretion, re-open the evidence at trial after the government, or even both litigants, have rested:

> There is no iron-bound, copper-fastened, double-riveted rule against the admission of evidence after both parties have rested upon their proof and even after the jury has entered upon its deliberations. Considerable latitude in discretion is vested in the trial judge in this respect. In exercising his discretion the trial judge must consider a number of factors. . . . A motion to reopen is clearly within the discretion of the trial court. In exercising its discretion, the court must consider the timeliness of the motion, the character of the testimony, and the effect of the granting of the motion. The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief. The evidence proffered should be relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused. The belated receipt of such testimony should not "imbue the evidence with distorted importance, prejudice the opposing party's case, or preclude an adversary from having an adequate opportunity to meet the additional evidence offered." *United States v. Larson*, 596 F.2d 759, 778 (8th Cir.1979).
>
> The most important consideration is whether the opposing party is prejudiced by reopening. One of the critical factors in evaluating prejudice is the timing of the motion to reopen. If it comes at a stage in the proceedings where the opposing party will have an opportunity to respond and attempt to rebut the evidence introduced after reopening, it is not nearly as likely to be prejudicial as when reopening is granted after all parties have rested, or even after the case has been submitted to the jury. Where, as in this case, reopening is permitted after the government has rested its case in chief, but before the defendant has presented any evidence, it is unlikely that prejudice sufficient to establish an abuse of discretion can be established.

*United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985).

Manifestly, if a district court is empowered to re-open the government's proof in a criminal jury trial after the prosecution has rested

Accordingly, on the overall record, the district court did not abuse its discretion by hearing additional testimony concerning the "felonious use" enhancement following its initial resolution of that controversy. To the contrary, its actions commendably served, ultimately, to correct that misconceived ruling. *See United States v. Tilton*, 714 F.2d 642, 643 (6th Cir. 1983) (per curiam) (instructing that a trial judge has a duty to "conduct the trial [or other proceeding] in an orderly fashion, to ensure that the issues are not obscured and to act at all times with a view toward eliciting the truth.").

Finally, Reid has assailed his sentence on the rationale that the government failed to prove, by a preponderance of the evidence, that he had used his unlawfully-possessed pistol on February 28, 2001 in a matter which fulfilled the statutory requirements of felonious assault.[8] Reid's attack was

---

its case, the lower court in the instant case did not abuse its discretion by re-opening the prosecution's evidence proffered in a non-jury sentencing proceeding.

[8]Application Note 7 to the Official Commentary to Guidelines section 2K2.1(b)(5) defines "felony offense" as "any offense (federal, state or local) punishable by imprisonment for a term exceeding one year, *whether or not a criminal charge was brought, or conviction obtained*." U.S.S.G. § 2K2.1, comment. (n.7). (Emphasis added). Indeed, conduct which was the subject of an indictment count of acquittal may result in a sentencing enhancement if proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 157 (1997); *McMillan v. Pennsylvania*, 477 U.S. 79, 92 (1986).

Under Tennessee law, an "assault" includes either "intentionally or knowingly [causing] another to reasonably fear imminent bodily injury; or intentionally or knowingly [causing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101 (2003). An "assault" is "aggravated" if the perpetrator "uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102. In Tennessee, "aggravated assault" is a Class C felony. Tenn. Code Ann. § 39-13-102(d)(1). A Class C felony is punishable by three to fifteen years in the state penitentiary. Tenn. Code Ann. § 40-35-101 (Sentencing Ranges Table).

anchored in a credibility challenge. The defendant has claimed that the district court should have believed him, rather than Skelton, because she was an interested witness with a motive for seeking revenge against him because the government had confiscated the engagement ring which he had fraudulently purchased for her; she had a criminal record; and some aspects of her story varied over time. However, a district court's credibility assessment is ordinarily unreviewable. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (*citing Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The appellate courts generally do not review the district court's determinations regarding witness credibility." *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir.1995).

The credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing, which will survive "clear error" review, if that evidence bears more than a "minimum indicium of reliability." *Id.* Skelton's credited testimony was sufficient to support the "felonious use" enhancement. *See United States v. Parker*, No. 99-5691, 2000 WL 1647922, at *1 (6th Cir. Oct. 23, 2000) (per curiam), *cert. denied*, 531 U.S. 1183 (2001); *United States v. Ray*, No. 98-6776, 2000 WL 1033010, at *1 (6th Cir. July 21, 2000) (per curiam).

This reviewing court has carefully examined the trial record, the briefs and all arguments of counsel, and the controlling law. It has identified no reversible error. Accordingly, the instant judgment of conviction and sentence against defendant Michael Shane Reid is **AFFIRMED**.