NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0724n.06
Filed: August 18, 2005

No. 03-1796

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC f/k/a MERCEDES-BENZ CREDIT CORPORATION, | ) ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | EASTERN DISTRICT OF MICHIGAN |
| SUMMIT NATIONAL, INC., | ) ) | |
| Defendant-Appellee. | ) | |

Before: NORRIS and GIBBONS, Circuit Judges; and TODD, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** DaimlerChrysler Services North America,

LLC ("DaimlerChrysler") brought a complaint for declaratory relief, seeking a judgment that it had

not breached a 1983 Software System Agreement under which DaimlerChrysler's predecessor had

licensed a software system from an alleged predecessor of Summit National, Inc. ("Summit").

Summit counterclaimed, arguing that DaimlerChrysler had breached the agreement and was

continuing to use the system despite the fact that Summit had terminated the license agreement. On

May 20, 2003, the district court granted partial summary judgment to Summit on the issue of

whether DaimlerChrysler breached the agreement and also issued a permanent injunction giving

---

[*]The Honorable James D. Todd, United States District Judge for the Western District of
Tennessee, sitting by designation.

DaimlerChrysler 180 days to stop using the system. DaimlerChrysler appealed, arguing that: (1) Summit did not have the right to enforce the agreement; (2) there was a genuine issue of material fact as to whether DaimlerChrysler breached the agreement; and (3) the injunction was based on an erroneous legal conclusion. DaimlerChrysler later amended the notice of appeal to include the district court's October 9, 2003, order denying its motion for reconsideration. For the reasons set forth below, we affirm the district court's order granting partial summary judgment and a permanent injunction and its denial of the motion for reconsideration.

**I.**

In 1983, Stockholder Systems, Inc. ("SSI"), which owned and marketed Automated Leasing Account System ("ALAS") software, entered into a "Software System Agreement" under which SSI granted Mercedes-Benz Credit Corporation a "perpetual license" to use ALAS at its Portland, Oregon facility. DaimlerChrysler is the successor-in-interest to Mercedes-Benz Credit Corporation.[1] ALAS provided the software platform used by DaimlerChrysler to track leasing contracts, leasing customers, and vehicles subject to lease in the United States and Canada. The Software Agreement contemplated that the software would be used only by DaimlerChrysler at the Portland facility to process its own data and the data of any of DaimlerChrysler's wholly owned subsidiaries. The agreement stated that DaimlerChrysler could not use ALAS, which was a "trade secret," at any other facility without notifying SSI and/or paying a license fee to SSI. There was also a non-disclosure provision in the agreement, charging DaimlerChrysler with the responsibility to "take all reasonable

---

[1]For the sake of convenience, we will use "DaimlerChrysler" to refer to both DaimlerChrysler and the Mercedes-Benz Credit Corporation.

steps to ensure" that ALAS or any portion thereof would not be made available to any other person, firm, or corporation without SSI's written consent. DaimlerChrysler reserved "the right to modify the Products to meet [DaimlerChrysler]'s particular needs and requirements," and SSI "acknowledge[d] the proprietary rights of [DaimlerChrysler] in any such modification." SSI retained the right to terminate the agreement if DaimlerChrysler breached the agreement and failed to take corrective action within thirty days of receiving notice from SSI of such breach. The Software Agreement stated that any disputes involving the agreement would be governed by Georgia law.

The last recorded installation of ALAS occurred in April 1993 in the Philippines. At some point between 1983 and 1998, Checkfree apparently acquired the rights to a system called ALAS from SSI. In July 1998, CheckFree sold certain assets to Summit. Summit President Kenneth Duffy stated in an affidavit that one of these assets was the ALAS software and that Summit acquired all rights related to ALAS. The Purchase Agreement between Checkfree and Summit indicated that Summit received a number of CheckFree's assets and liabilities. The Purchase Agreement stated that Summit bought all of CheckFree's "Specified Assets," meaning:

> all Assets used in or for the Businesses as of the Closing Date,...all of Seller's rights to source code related to or antecedent to versions of the Software listed in Schedule 4.01(n)(ii), and all other Intangible Property..., including, but not limited to, the following Assets...:
> ...
> (3) including all of Seller's Contract Rights under the Specified Contracts...
> ...
> (9) All of Seller's claims, causes of action and other legal rights and remedies...relating to such Seller's ownership of the Specified Assets...
> ...
> (13) All rights of Seller in those Assets listed on Schedule 4.01(n)(i) and 4.01(n)(ii).

Both Schedule 4.01(n)(i) and Schedule 4.01(n)(ii) list ALAS. "Asset" is defined as including software and contract rights, and "contract" is defined as including license agreements. The "Specified Contracts" referred to above are listed on Schedule 4.01(o), which provides that "customer contracts" are "included under separate cover." Summit President Duffy stated in an affidavit that the Software Agreement was one of the agreements provided by CheckFree to Summit "under separate cover." DaimlerChrysler disputes the assertion that this Purchase Agreement included an assignment of the Software Agreement to Summit, and thus DaimlerChrysler also disputes that Summit is a successor to SSI's rights under the Software Agreement.

The ALAS system was installed at DaimlerChrysler's Portland facility. However, many DaimlerChrysler employees, including about 1400 employees in 2002, logged on to ALAS from locations outside of Portland. DaimlerChrysler employee Barry Sobel, the senior manager in charge of systems integration, stated in a deposition that these employees remotely accessed ALAS and were "users" of the system. Another DaimlerChrysler employee with managerial responsibilities for ALAS, Peter Athan, confirmed that many DaimlerChrysler employees outside of Portland used ALAS. Athan also stated in a deposition that during the late 1990s, three outside companies worked on ALAS and had access to its source code.[2] At various points during these companies' work on ALAS, the ALAS source code was downloaded and moved to facilities other than the Portland facility, including a DaimlerChrysler facility in Connecticut. Victor Inglese, Athan's successor,

---

[2]"The source code of a program is its operating instructions in a format that a computer programmer can read and use to maintain and revise a program." *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 752 n.1 (7th Cir. 2002).

testified that employees of an independent contractor, Ciber, continued to work on support and programming of the ALAS system in 2003. Inglese confirmed that these contractors had access to the ALAS source code. Athan indicated that all third parties who had access to ALAS were required to sign confidentiality agreements, an assertion seconded by DaimlerChrysler manager of procurement and administration Ted Eisenhut.

DaimlerChrysler also presented evidence suggesting that the ALAS system in use by DaimlerChrysler at the time of the district court's opinion granting partial summary judgment and a permanent injunction was not the same as, or even relatively similar to, the ALAS system licensed to DaimlerChrysler by SSI in 1983. An affidavit by DaimlerChrysler manager Gwendolyn Cannon, submitted in opposition to Summitt's summary judgment motion, stated that as of April 2003:

> [I]t is doubtful that there is any unchanged [ALAS] source code that it [sic] still in use. . . . [T]he ALAS source code is a wholly revised and renewed program that has been modified by DaimlerChrysler over the last 20 years and it is unrecognizable when compared to the ALAS source code delivered under the licensing agreement.

Cannon estimated that DaimlerChrysler had spent approximately 250,000 man hours in upgrading and modifying the ALAS source code. In a second supplemental affidavit submitted in support of the motion to reconsider, Cannon stated that the original ALAS software consisted of 18 "batch" programs, for which input was limited to manual data entry and which were not compatible with modern on-line technology. DaimlerChrysler's portfolio management software system as of 2003 included 114 on-line interactive programs, 396 new "batch" programs, and 5 of the original 18 "batch" programs of ALAS. Both of Cannon's affidavits conclude, "Because DaimlerChrysler has made such tremendous modifications to the ALAS source code, DaimlerChrysler is now the owner

of the source code." DaimlerChrysler employee Athan also thought that DaimlerChrysler owned the entire "portfolio system," as he called it, which subsumed any earlier version of ALAS system: "I was under the impression that we owned [the ALAS source code] and we could do what we wanted, and we were working on it so much that I thought personally that all of the vendor - not only the vendor support but the vendor connections to the product were obsolete." In communication with Summit President Duffy in 2000, Athan stated that DaimlerChrysler "currently does use software that was originally based on ALAS." A year later, Duffy described ALAS as "a character-based mainframe product that seems to be becoming part of a dying breed of older legacy systems."

In opposition to the motion to reconsider, Summitt submitted portions of Cannon's deposition. These cast serious doubt on Cannon's personal knowledge about the current recognizability of the ALAS source code, time and money spent on modifications of the ALAS system, and ownership of the code.

Subsequent to the orders from which this appeal is taken, the district court entered an April 8, 2004, order denying DaimlerChrysler's motion for summary judgment. In this order the district court cited some facts that are not included in the joint appendix regarding various versions of the ALAS system.[3] Specifically, the court stated that the version of ALAS licensed to DaimlerChrysler by SSI in 1983 was "ALAS 6.0." A copyright registration form for "ALAS 9.0" was filed in 1995 by Servantis and was amended in 2003 by Summit to characterize ALAS 9.0 as a derivative work

---

[3]The district court cites to various "supplemental briefs" that are not part of the record and were evidently briefs filed in connection with a summary judgment motion other than the one appealed here.

based on "ALAS 7.0 and all other previous versions of the ALAS software program." Summit also registered "ALAS 7.0" in 2003, describing ALAS 7.0 as incorporating preexisting works including ALAS 6.0.

On April 18, 2002, DaimlerChrysler received a letter (dated April 10) notifying it that Summit considered DaimlerChrysler in breach of the Software Agreement. Summit invoked the 30-day cure period set out by the agreement and demanded that DaimlerChrysler cease its breach of the agreement within that period. In a letter dated May 10 (but received by DaimlerChrysler on May 8), Summit informed DaimlerChrysler that it was terminating the agreement and demanded the cessation of the use of all licensed Summit products. On May 9, 2002, DaimlerChrysler filed a complaint for declaratory relief, seeking a judgment that DaimlerChrysler was not in default of the Software Agreement. Summit filed an answer and counterclaim on June 5, 2002, seeking a declaratory judgment that DaimlerChrysler was in violation of the Software Agreement, as well as an injunction against DaimlerChrysler's continued use of ALAS. In February 2003, Summit filed a motion (later amended) for partial summary judgment and a permanent injunction, due to DaimlerChrysler's use of ALAS at multiple locations as well as DaimlerChrysler's disclosure of ALAS source code to third parties. DaimlerChrysler filed a cross-motion for summary judgment.

On May 20, 2003, the district court denied DaimlerChrysler's motion for summary judgment and granted in part Summit's motion for partial summary judgment, on the basis that there was no genuine issue of material fact as to whether DaimlerChrysler breached the Software Agreement by

disclosing the ALAS source code.[4]  The court permanently enjoined DaimlerChrysler from using ALAS but gave DaimlerChrysler 180 days to replace ALAS with other software.  DaimlerChrysler timely appealed the district court's May 20, 2003, order to this court.[5]  DaimlerChrysler also moved for reconsideration of this order, but the district court denied the motion in October 2003.  On November 7, 2003, DaimlerChrysler amended its appeal to this court to include an appeal from the district court's denial of its motion for reconsideration.

## II.

The issuance of a permanent injunction by the district court is reviewed by this court under the following standards: "Factual findings are reviewed under the clearly erroneous standard, legal conclusions are reviewed *de novo*, and the scope of injunctive relief is reviewed for an abuse of discretion."  *S. Cent. Power Co. v. IBEW, Local Union 2359*, 186 F.3d 733, 737 (6th Cir. 1999).  A district court's grant of summary judgment is reviewed *de novo*.  *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party."  *Little v.*

___

[4]The court held that questions of fact remained as to whether DaimlerChrysler violated the Software Agreement by accessing ALAS from facilities other than its Portland, Oregon facility.

[5]DaimlerChrysler filed another motion for summary judgment in September 2003, because Summit "does not have a copy of the ALAS 1983 Source Code, because Summit has no damages and because Summit has failed to protect its claimed property rights."  The district court held a hearing on this motion on November 19, 2003, and denied it in an order issued April 8, 2004.

*BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). Put another way, summary judgment is appropriate if the party with the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). DaimlerChrysler also appeals the district court's denial of its motion to reconsider the district court's order granting partial summary judgment and a permanent injunction. "Such denials are typically reviewed for an abuse of discretion, but where a Rule 59(e) motion seeks reconsideration of a grant of summary judgment...we conduct a *de novo* review." *Nat'l Leadburners Health & Welfare Fund v. O.G. Kelley & Co.*, 129 F.3d 372, 374 (6th Cir. 1997).

A preliminary issue is whether the district court erred in finding that Summit owns the right to enforce the 1983 Software Agreement. Assuming that CheckFree owned ALAS and the rights to enforce the Software Agreement at the time of the transaction between CheckFree and Summit (which, as described *supra*, the parties agree was the case), the district court correctly concluded that Summit has the right to enforce the agreement. It is clear from the Purchase Agreement between the two entities that Summit bought the ALAS software itself from CheckFree, as ALAS was an asset used in the business as of the closing date on the deal, and the definition of asset in the agreement included software. Under the clear terms of the Purchase Agreement, Summit also acquired the "rights in" ALAS. Therefore, as the district court noted, since the Software Agreement sets out the rights in ALAS that belong to the owner of ALAS, Summit has those rights and is the

successor to SSI for the purposes of interpreting the Software Agreement. Also, Summit President Duffy swore in an affidavit that the Software Agreement was provided to Summit as a customer contract "under separate cover" as part of the CheckFree-Summit transaction.[6]

The more difficult issue is whether the district court correctly granted partial summary judgment to Summit. The court held that there was "no material issue of genuine fact [sic] as to whether DaimlerChrysler breached the Software Agreement by disclosing ALAS source code." Based on the evidence available to the district court at the time, this conclusion was sound. The testimony of DaimlerChrysler employees Athan and Inglese clearly suggested that DaimlerChrysler had not taken all reasonable steps to prevent ALAS from being made available to third parties. For instance, Athan stated that during the late 1990s, three outside companies worked on ALAS and had access to its source code, and Inglese testified that employees of another independent contractor continued to work on the ALAS system in 2003. The record is devoid of evidence that DaimlerChrysler took steps to prevent disclosure to third parties. In response to Summit's motion for summary judgment, DaimlerChrysler admitted that third parties "may have seen ALAS source code" and relied only on 17 U.S.C. § 117 to support its argument that DaimlerChrysler could use independent contractors to assist in adapting the software for particular purposes. The district court rejected this argument, both because DaimlerChrysler, as a licensee, could not invoke § 117, and

---

[6]Although Summit had submitted this affidavit in connection with the cross-motions for summary judgment, the district court erroneously stated that "Summit...did not provide any evidence beyond a statement in its brief to support the notion that the Software Agreement was included under 'separate cover.'"

because even if it could, whether the disclosure of the source code "constituted copyright infringement is not relevant to whether [DaimlerChrysler] breached the Software Agreement."[7]

Given the record before the district court in May 2003 and the position taken by DaimlerChrysler, including its admission of disclosure, the district court did not err in concluding that a reasonable jury could not return a verdict for DaimlerChrysler on the issue of whether DaimlerChrysler breached the Software Agreement by failing to take reasonable steps to prevent disclosure of ALAS to third parties. Thus, the district court's order granting partial summary judgment to Summit was appropriate.

Nor did the district court abuse its discretion in denying reconsideration. The additional evidence before the court in connection with the motion to reconsider was all available to DaimlerChrysler at an earlier time. With regard to the supplemental Cannon affidavit, Cannon's deposition, submitted in opposition to the motion to reconsider, called into question the admissibility of the supplemental affidavit and of the earlier Cannon affidavit, at least to some degree.

DaimlerChrysler makes much of the district court's April 8, 2004, order, which is not the subject of this appeal but seems to contradict the May 2003 order granting partial summary judgment and granting a permanent injunction. In the April 8, 2004, order, the court stated that "a genuine issue of material fact remains as to whether the code revealed to third parties was the

---

[7]DaimlerChrysler continues on appeal to press its argument based on 17 U.S.C. § 117 and confuses the issue of the availability of a defense under § 117 in a copyright infringement action with the breach of contract issue presented here. Most recently, it submitted the recent case of *Krause v. Titleserv, Inc.*, 402 F.3d 119 (2nd Cir. 2005), which is simply immaterial to the resolution of this case.

original source code, or whether it was modified to the extent that the original code was obsolete." This statement was based on evidence suggesting that the possibility that any ALAS source code disclosed to third parties by DaimlerChrysler might not have been the same ALAS source code that was licensed from SSI in 1983. The tension between the court's two statements is understandable to some degree, as much of DaimlerChrysler's evidence tending to show that there were different versions of ALAS was not submitted until after the May 20 order issued. For instance, the second, more detailed Cannon affidavit, submitted in June 2003, describes in detail the minimal role of ALAS in DaimlerChrysler's overall portfolio management software. Also, based on language in some of the district court's later rulings, additional evidence was evidently presented to the court suggesting that there are various versions of ALAS and that the version being used by DaimlerChrysler during this litigation was not the same as the version licensed to DaimlerChrysler in 1983. But the statement may also be understood as a reference to the fact that, while it is clear that DaimlerChrysler took no steps to prevent disclosure of ALAS and its source code, the exact nature of what was disclosed and the usefulness of any prohibited disclosures to third parties are quite murky, given the evidence of DaimlerChrysler's extensive modifications to the program. Whatever the explanation for the possible inconsistency, any contradiction in the district court's rulings does not necessitate any action by this court in connection with this appeal. The April 2004 order is not before us now. Moreover, the district court can reconsider its own rulings at any time in order to maintain consistency with itself. *See United States v. Reid*, 357 F.3d 574, 580 (6th Cir. 2004) ("In both civil and criminal cases, a trial court is empowered to revisit any of its previous non-final rulings in the light of a perceived error or misjudgment, new relevant information, or even its

simple conclusion that it may have acted in ill-considered haste."); *see also In re Air Crash Disaster*, 86 F.3d 498, 518 (6th Cir. 1996). In addition, the district court will have another opportunity to consider the import of the evidence on the issue of DaimlerChrysler's disclosures, because the details of what was disclosed and its usefulness are highly pertinent to the damages issue, which the district court has yet to resolve.

With regard to the district court's grant of a permanent injunction, the district court did not abuse its discretion in permanently enjoining the use of ALAS. *See Dana Corp. v. Celotex Asbestos Settlement Trust*, 251 F.3d 1107, 1118 (6th Cir. 2001) ("'Perhaps the most significant single component in the judicial decision whether to exercise equity jurisdiction and grant permanent injunctive relief is the court's discretion.'") (quoting 11A Charles A. Wright et al., Wright & Miller Federal Practice and Procedure § 2942 (2d ed. 1995)). Contrary to DaimlerChrysler's assertion, the district court was not required to determine damages prior to issuing an injunction. Moreover, unlike DaimlerChrysler, we do not read the injunction as prohibiting DaimlerChrysler's use of its own property.[8] As described *supra*, the injunction was based on a valid legal conclusion, and the district court properly balanced the interests of the parties and allowed DaimlerChrysler 180 days to discontinue its use of ALAS. As the district court stated, this outcome represented "a delicate balance between the oppressiveness of an injunction to DaimlerChrysler and the protection of Summit's property rights." We emphasize, however, that our ruling does not preclude the district

---

[8]Whether DaimlerChrysler could, as a practical matter, comply with the injunction and still continue to make use of the portions of its system in which it had a proprietary interest is an issue not explored in this appeal.

court from modifying the injunction prior to entry of final judgment, *see Reid*, 357 F.3d at 580, if

DaimlerChrysler is indeed correct that the court has changed its mind about the existence of a fact

issue with regard to DaimlerChrysler's breach.

## III.

For the foregoing reasons, we affirm the district court's grant of partial summary judgment

and a permanent injunction to Summit.