**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0487n.06

Nos. 06-5957, 06-5959, 08-5721, 08-5724, 08-5725, 08-5726

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| THOMAS P. LEWIS | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant | ) | **Jul 13, 2009** |
| | ) | LEONARD GREEN, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| UNITED STATES OF AMERICA | ) | UNITED STATES DISTRICT |
| (Internal Revenue Service) | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant/Third-Party Plaintiff - Appellee | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RONALD EDMONDS | ) | |
| | ) | |
| Third-Party Defendant | ) | |
| | ) | |

**BEFORE: CLAY and ROGERS, Circuit Judges, and JORDAN, District Judge.**[*]

**ROGERS, Circuit Judge.** When withheld employee income taxes were not turned over to the Government as required by law, the Internal Revenue Service went against two corporate officers for the deficient amounts. This is permitted by the Internal Revenue Code, if the officers were responsible for turning over the withheld sums and willfully failed to do so. The district court—in a series of orders that present some appellate jurisdiction questions in this court—granted the

---

[*]The Honorable R. Leon Jordan, Senior District Judge of the Eastern District of Tennessee, sitting by designation.

Government summary judgment. Because there are genuine issues of material fact regarding required elements of liability for both officers, reversal of the summary judgment is required.

VisionAmerica was a publicly traded health care company in the field of eye care. Shortly before its demise, it failed to make its payroll tax payments. Employers such as VisionAmerica are required to deduct payroll taxes from their employees' wages and pay them to the Government on behalf of the employees. *See* 26 U.S.C. § 3102. The withheld taxes are held in trust for the United States until paid. *See id.* § 7501. While the money belongs to the United States, the employer retains control for a time.

The money of course may not be used to shore up the finances of an enterprise that is at risk. The Internal Revenue Code accordingly imposes direct liability on any "person required to collect, truthfully account for, [or] pay over" such taxes if the person "willfully fails" to fulfill these duties. 26 U.S.C. § 6672; *see Slodov v. United States*, 436 U.S. 238, 246-50 (1978). The law imposes personal liability on such corporate officers so long as they are "under a duty" to pay the wrongfully diverted taxes. 26 U.S.C. § 6671.

VisionAmerica failed to pay required payroll taxes from the fourth quarter of 1998 through the first quarter of 2000. VisionAmerica subsequently went bankrupt, and the Government did not receive about four million dollars owed in taxes. The Government sought to hold the corporate officers in this case personally liable because they had been under a duty to pay the corporate payroll taxes and had willfully failed to pay them. During the relevant period, Tom Lewis was CEO of

VisionAmerica, and Ron Edmonds was CFO. Lewis and Edmonds claim that they cannot be held liable.

Edmonds's theory of the case is that he was not under a duty to pay the payroll taxes because VisionAmerica's board of directors had relieved him of the responsibility to pay the payroll taxes. In the aftermath of an unrelated accounting problem, the board lost at least some confidence in Edmonds and reorganized the financial affairs of the company. The board installed Todd Smith to work with Edmonds. The parties dispute whether Edmonds or Smith had the responsibility to direct funds to pay the IRS rather than other creditors, but Edmonds concedes that if he had the responsibility to pay the taxes, his failure to do so was willful.

Lewis argues that he lacked both the authority to pay the taxes and the willfulness necessary to establish personal liability. In Lewis's view, despite his apparent control of the company, in practice the board of directors strictly curtailed his ability to influence the financial affairs of the company. Moreover, Lewis claims that he had no actual knowledge that VisionAmerica had not paid the payroll taxes, and thus cannot be liable for willfully diverting funds to other creditors.

The Government contested both taxpayers' versions of the facts, and the district court granted it summary judgment on the issue of liability. After canvassing the evidence, the district court reasoned that the evidence, "aside from Edmonds' self-serving assertions to the contrary," showed that Edmonds "continued to exert control over the Company's major financial decisions" during the relevant period. The district court concluded that Lewis bore responsibility for the failure to pay the taxes due to his considerable authority over VisionAmerica's affairs. The court further discounted

Lewis's "self-serving contentions," and based on the testimony of other witnesses concluded that Lewis's failure to pay the taxes was willful because "it is obvious" that other VisionAmerica employees had specifically warned Lewis that payroll taxes had gone unpaid. On September 12, 2005, the court granted summary judgment to the Government against both taxpayers and directed the clerk of the district court to enter judgment for the Government.

However, the "judgment" that the court entered did not specify the amount of damages that the court awarded to the Government on its claims. The Government did not timely move to correct this error under Fed. R. Civ. P. 59(e), but did file a motion about three months later to amend the judgment under Rule 60(a). The district court rejected that motion because the omitted damages amount was not a clerical error within the scope of Rule 60(a), but the court implicitly recognized that its September 12 judgment was not final by directing a magistrate to conduct a hearing on the proper amount of damages. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988); *United States v. Reid*, 357 F.3d 574, 580 (6th Cir. 2004).

Nevertheless, Lewis and Edmonds each subsequently filed a notice of appeal from the September 12 judgment. The Government moved to dismiss the appeal as taken from a nonfinal judgment, and we remanded so that the district court could calculate the amount of damages. The district court did so, and Lewis and Edmonds each filed a notice of appeal from the subsequent order that specified the amount of damages awarded to the United States. These notices of appeal were premature because the district court had not yet entered judgment in accordance with this order, but the notices of appeal nonetheless became effective when the district court later entered final

judgment. *See* Fed. R. App. P. 4(a)(2). The district court subsequently entered an amended judgment setting forth the amounts awarded from Lewis and Edmonds along with dates to permit calculation of interest. Edmonds and Lewis then each filed additional notices of appeal, so that the consolidated appeals of Edmonds and Lewis bear six appellate docket numbers.

Summary judgment in this case was not warranted because, under the familiar summary judgment standard, viewing the submitted evidence in a light most favorable to Lewis and Edmonds, there are genuine issues of material fact with respect to each of them.

First, Edmonds shows that disputes remain about material facts that bear on his liability. He testified that at the relevant time, Smith was responsible for deciding "what was paid and what wasn't paid." Edmonds testified that after the board of directors reorganized the financial affairs of the company, Edmonds continued to work on resolving VisionAmerica's earlier underpayments that had occurred on Edmonds's watch, but that Smith was in charge of making ongoing payroll tax payments. Multiple employees testified that after the reorganization, accounting staff reported to Smith, not Edmonds. If, as he claims, Edmonds was not "one who has authority to direct payment of creditors," then he cannot be held liable. *See Gephart v. United States*, 818 F.2d 469, 473 (6th Cir. 1987) (quotations omitted).

Smith did testify that Edmonds bore primary responsibility for the payroll taxes at the relevant time, and that Edmonds still had considerable authority to prioritize payments. But for summary judgment purposes we must assume that when Smith's and Edmonds's stories diverge, the factfinder may accept Edmonds's version.

The Government argues that Edmonds admitted his responsibility for the payroll tax deficiencies on an IRS Form 4180. But these admissions appear to relate only to responsibility for taxes before the disputed period, taxes that have been paid. While a jury might believe the Government's theory that the document contains Edmonds' admissions of responsibility through December 8, 1999, a jury might also believe Edmonds's assertion that he only referred to the tax problems that had developed through the time of the reorganization. The document does not unambiguously resolve the question of which interpretation is correct. Edmonds testified that he was not responsible for the continued nonpayment of taxes during the contested period because the board of directors had relieved him of his responsibilities at that point. Crediting his testimony, as the law requires at the summary judgment stage, means that sufficient facts are in dispute to warrant a trial under familiar summary judgment practice.

But, the Government claims, the normal rules of summary judgment somehow do not apply to tax cases, and "the uncorroborated oral testimony of the taxpayer is insufficient as a matter of law to overcome summary judgment." The cases that the Government cites do not, however, support such a position. *Liddy v. Comm'r of Internal Revenue*, 808 F.2d 312 (4th Cir. 1986), was an appeal from a bench trial in the Tax Court, and did not address summary judgment standards at all. The case dealt with the burden of production at trial when a taxpayer had destroyed corroborating evidence, *see id.* at 315, and it is of no help to the Government. Our unpublished decision in *Williams v. United States*, Nos. 93-5965, 93-5966, 1995 WL 21431 (6th Cir. Jan. 19, 1995), likewise

does not support the Government's position.[1]  Thus, genuine issues of material fact regarding liability preclude summary judgment against Edmonds.

Lewis likewise presents genuine issues of material fact sufficient to preclude summary judgment against him.  Factual disputes remain both on whether Lewis had authority to pay the payroll taxes and on whether he willfully failed to pay them.

Lewis testified that, as CEO, he "spent most of my time on managing day-to-day field operations and pursuing new development opportunities for the company."  He also "spent a fair amount of time in shareholder relations, and . . . any special projects that would have been directed to me by the board of directors."  On the other hand, "financial policy was ultimately directed by the board of directors."  Lewis was not on the audit committee, which consisted of outside directors and the chairman of the board.  Edmonds, as CFO, reported to the board of directors.  Lewis testified that in practice he did not sign checks without Edmonds's approval.  He testified that "stewardship over the monetary assets to the company" was with Edmonds.  Moreover, he testified that the board of

---

[1]In *Williams*, we upheld a grant of summary judgment to the Government in a tax case, but the case did not involve the question of whether the taxpayer's evidence had shown a genuine issue of material fact.  The case concerned whether the Government's evidence was legally sufficient to support the assessment when the taxpayer had conceded liability but offered a "mere general denial of correctness" of the assessed amount of the tax.  *See id.* at *4.  The taxpayer argued that the evidence supporting the Government's assessment was insufficient, but "failed to offer any evidence to rebut" the assessment, and failed to "produce any records" documenting the correct amount of his liability.  *See id.* at *2.  Summary judgment was appropriate because the taxpayer had the burden to prove the Government's assessment wrong, but failed to offer anything to meet that burden.  *See id.* at *4.  While Edmonds likewise bears the burden to prove the Government's assessment wrong, he has offered evidence in the form of his own testimony that if believed would show that he is not one who may be found liable.

directors rejected his recommendation that it terminate Edmonds as CFO; instead it retained Edmonds but installed Smith in the reorganized accounting department.

Lewis presented enough disputed evidence to permit a conclusion that he did not have a "duty" to pay the payroll taxes. Under his version of the evidence, the board of directors had assigned oversight over financial operations to Edmonds, directly supervised Edmonds, and showed that it did not follow Lewis's recommendations about the financial department. A factfinder could infer that the board would not have supported Lewis had he attempted to override Edmonds's decisions about which creditors to pay. A corporate title alone, even that of CEO, is not enough to establish liability under the statute; the "practical reality" of the corporation matters. *See O'Connor v. United States*, 956 F.2d 48, 51-52 (4th Cir. 1992). The required "functional" test requires a "factual inquiry" into Lewis's precise role. *See Gephart*, 818 F.2d at 473. Since Lewis and the Government have each offered evidence in support of conflicting versions of the facts, a factfinder will have to conduct that inquiry.

Likewise, Lewis presented enough evidence about whether he willfully failed to pay the payroll taxes that a factfinder must address that question. Lewis testified that he first learned of VisionAmerica's payroll tax delinquency in mid-March of 2000, and that the board of directors almost immediately removed his authority to influence the problem. To fail willfully to pay the payroll taxes, Lewis would have to have known that the taxes were delinquent. *See Gephart*, 818 F.2d at 475. Negligence alone would not establish liability; at a minimum, reckless conduct would be required. *See Calderone v. United States*, 799 F.2d 254, 259-60 (6th Cir. 1986).

The Government did not present uncontested evidence sufficient to find that Lewis acted willfully. It points to a meeting in November 1999, but uncontested facts show at most that Lewis, Edmonds, and others discussed the fact that VisionAmerica had an ongoing dispute with the IRS, but not that the dispute concerned unpaid payroll taxes. Likewise, undisputed facts show at most that Lewis had knowledge that the IRS had levied some of the company's bank accounts, but not that Lewis knew that the levies were for payroll taxes rather than, as Lewis claims Edmonds told him, IRS errors concerning the relationship between VisionAmerica and its subsidiaries.

Because genuine issues of material fact remain regarding Lewis's authority to prioritize payments to creditors and regarding his knowledge of the payroll tax deficiency during the relevant period, Lewis must be allowed to make his case to a factfinder.

Viewing the evidence, including each taxpayer's own testimony, in a light most favorable to each taxpayer shows that the Government did not establish that it was entitled to summary judgment against either taxpayer. We therefore reverse the summary judgment entered by the district court and remand for further proceedings consistent with this opinion.