NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0108n.06

No. 25-1050

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 05, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

 *Plaintiff-Appellee,*

v.

EMORY DAY,

 Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

---

Before: GRIFFIN, BUSH, and NALBANDIAN, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** In June 2021, a user named Vivy91 sent child pornography to someone through the dating app MeetMe. Vivy91 also suggested that the recipient should join in having sex with a child of about the same age as the child in the pictures. Vivy91 had sent similar messages with child pornography several times before.

The recipient informed law enforcement, and a detective was assigned to the investigation. The detective received information from MeetMe corroborating that Vivy91 had sent child porn, so he contacted the FBI for assistance.

After the detective told an FBI agent about his findings, the FBI agent applied for a search warrant. The warrant application explained that the FBI agent was advised of reports that Vivy91 had sent child pornography and sexually charged messages. Also detailed was how the detective had sought and received the AT&T and T-Mobile IP addresses used by Vivy91 to log into MeetMe. The warrant application further stated that the detective had sought and received chat logs from

MeetMe, which included Vivy91's solicitation for others to have sex with an eleven- or twelve-year-old child.

The application also explained how the detective had received the physical address associated with the AT&T IP address, which belonged to defendant-appellant Emory Day's neighbors. Specifically, officers had spoken to those neighbors, who said that they gave Day (and only Day) their Wi-Fi password. When the FBI agent reviewed the neighbors' Wi-Fi data, he found two phones connected to the Wi-Fi that neither neighbor owned. Based on these and other facts, the application concluded that "[p]robable cause exists that . . . evidence" of unlawful conduct could be found at Day's home. R. 45-1, Application for Search Warrant, PageID 318–19.

A magistrate judge granted the warrant, and the FBI searched Day's home. The FBI agent who executed the warrant saw Day (and only Day) standing in the garage. Another FBI agent found an LG cell phone in the kitchen and a Samsung cell phone in the garage.

Day admitted to owning the LG phone. The LG phone "had consistent visits to MeetMe" in "the web history on one of the web browsers." R. 88, Transcript, PageID 836. The LG phone was logged into many of Day's accounts for apps and email services, and it had an extensive list of pornography in the internet search history.

The Samsung phone had the MeetMe app, child pornography (including the images from MeetMe), pictures and selfies of Day, and the profile picture for Vivy91. Location data from those photographs indicate that they were taken in or around Day's home. Furthermore, the Samsung phone had text messages where the sender referred to himself as "Emory" and other messages that were written as if they were sent to Day. Finally, Day was logged into Facebook Messenger on the Samsung phone, and the Instagram app auto filled with Day's name. The login information for these accounts, including the MeetMe account, was the same as the login information on the

LG phone. Additionally, searches for child pornography that resembled the photos sent by Vivy91 were in the internet search history for both phones.

Armed with this evidence, the Government charged Day with one count of distributing child pornography and one count of possessing child pornography. After Day unsuccessfully moved to suppress the evidence from the search, a jury convicted him as charged. The district court denied Day's motion for a judgment of acquittal or a new trial. And it then district court sentenced Day to 132 months in prison followed by five years of supervised release.

This timely appeal followed. Day makes four arguments before us, none of which persuades.

His first argument is that probable cause did not support the warrant to search his home. Reviewing the law de novo and the facts for clear error, we disagree. *See United States v. Gross*, 662 F.3d 393, 398 (6th Cir. 2011). A warrant requires "probable cause to believe the instrumentalities or evidence of crimes will be found" at the location to be searched. *United States v. Wagers*, 452 F.3d 534, 541 (6th Cir. 2006) (quoting *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998)). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 541 (quoting *United States v. Grubbs*, 547 U.S. 90, 95 (2006)). The warrant must also be supported by "some independent evidence linking the residence to the crime." *United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018). But we need to conclude only that there was a "substantial basis" for the magistrate's probable-cause finding to uphold the warrant. *Id.* at 586.

The police sufficiently demonstrated probable cause in their warrant application. Officers received child pornography from MeetMe and learned that the phone used to send those images connected to the Wi-Fi at the neighbors' house. Those neighbors then told officers that they gave

their Wi-Fi password to one person and one person only—their next-door neighbor, Emory Day—and that two of the devices logged into their Wi-Fi router were not theirs. A reasonable person could believe that there was a fair chance of finding evidence of child pornography at Day's home based on these facts. *See id.* at 587. The neighbors provided the connection between the images sent and Day's home, and a reasonable person could believe that Day was sending child pornography using the devices that the neighbors did not recognize. The warrant was therefore properly supported.

Day's second argument is that the evidence was insufficient for a conviction. Having viewed "the evidence in the light most favorable to the prosecution," we conclude a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Coleman*, 458 F.3d 453, 456 (6th Cir. 2006) (quoting *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005)). Day did not contest whether the images were child pornography—he just argued that the Samsung phone (which contained the images) was not his.

The Government produced enough evidence to show that the Samsung phone was his. The phones were found in Day's home, and both phones had Day's login information for his social media pages. Moreover, Day admitted to owning the LG phone, which had much of the same login information as the Samsung, and the person using the Samsung phone searched for the same types of imagery as the LG user, which also matched the child pornography that Vivy91 sent. It is highly unlikely that two different people would independently search for the same types of illicit imagery in the same home with the same social media login information. A reasonable jury could find beyond a reasonable doubt that the Samsung phone was Day's phone.

Day's third argument is that he should have been granted a new trial because the district court did not let him stipulate to the nature and content of the images to avoid having them shown

4

to the jury. But child pornography defendants do not have the right to do that, *United States v. Luck*, 852 F.3d 615, 625–26 (6th Cir. 2017), so the district court did not abuse its discretion in denying Day's motion for a new trial, *see United States v. Robinson*, 99 F.4th 344, 366 (6th Cir. 2024).

Day's final argument is that the district court's application of the sadistic or masochistic conduct enhancement under U.S.S.G. § 2G2.2(b)(4)(A) was procedurally unreasonable. The district court did not clearly err in finding that the government provided sufficient evidence to apply this enhancement.[1] *See United States v. Vowels-Harper*, 159 F.4th 1095, 1100 (6th Cir. 2025) (applying this standard of review to the same enhancement in U.S.S.G. § 2G2.1(b)(4)(A)).

The sadistic or masochistic conduct enhancement applies when the Government proves by a preponderance of the evidence that the images "show[] the sexual penetration of a prepubescent minor." *Id.* at 1101. "The credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing, which will survive clear error review, if that evidence bears more than a minimum indicium of reliability." *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004) (quoting *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995)) (quotation marks omitted).

An FBI agent testified that the images underlying the child pornography charges featured "a prepubescent minor," and that one of the images introduced into evidence depicted a girl with

---

[1] Day also suggests that the district court erroneously applied the enhancement because the images were AI-generated, but Day conceded that the photos were child pornography in the district court, and, under circuit precedent, a litigant waives appellate review of an issue when he concedes it in the district court. *See United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016). Even if Day had not waived the issue, his speculation that the images were AI-generated would not move the needle. He has offered no evidence or argument to support that speculation, so there would be no basis for finding that the district court erred.

a "penis in her anus." R. 89, Transcript, PageID 984–88. This testimony is consistent with that of the detective, so the district court did not clearly err.

For the foregoing reasons, the conviction and sentence are **AFFIRMED**.